In the Matter of the Application of the THIRTY-FOURTH STREET RAILROAD COMPANY for the Appointment of Commissioners.

The fact that the State Constitution (Art. 3, § 18) prescribes conditions upon which street railroads may be constructed does not exclude the legislature from imposing conditions other than those so prescribed.

Except as restrained by the Constitution, the legislative power is untrammeled and supreme, and a constitutional provision which withdraws from the cognizance of the legislature a particular subject, or which qualifies or regulates the exercise of the legislative power in respect to a particular incident of that subject, leaves all other matter and incidents under its control.

The provision of the "Street Surface Railway Act" (§ 14, chap. 252, Laws of 1884), imposing as a condition to the construction, extension or operation of a street railroad in a street or highway in which another street railway has been lawfully constructed, that the consent of the company owning and maintaining such other road shall be obtained, is not a delegation of legislative power to the company whose consent is required, and is constitutional and valid.

*Barto* v. *Himrod* (8 N. Y. 483), distinguished.

Upon application for the appointment of commissioners as authorized by said constitutional provision, and as provided for by said act, where the consent of the requisite number of property-owners cannot be obtained, the court is not vested with any discretion to grant or deny the motion upon a consideration of the question of the utility or necessity of the proposed road; nor has it the power to deny the application because of failure of the applicant to procure the requisite consent of another company. Inability to obtain the consent of property holders is the only prerequisite to the application.

Where a case is presented, contemplated by the Constitution, the court is bound to exercise the power conferred upon it, which is a mere naked power of appointment, and, *it seems*, the question as to whether the proposed road ought to be constructed is to be determined, in the first instance, by the commissioners so appointed, and the power of the court to pass upon it arises only after they have made their report and returned the evidence taken by them.

*In re Thirty-fourth St. R. R. Co.* (37 Hun, 442), reversed.

(Argued March 16, 1886; decided June 1, 1886.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made July 17, 1885, which denied an application on the part of the petitioner above named, the nature of which, as well as the material facts, are stated in the opinion. (Reported below, 37 Hun, 442.)

*Joseph S. Auerbach* for appellant. The court erred in holding that it was empowered on the return day of the petition and before appointing the commissioners to take evidence and try the question whether the railroad's consent could or could not be obtained. (*In re Gilbert El. Ry. Co.*, 70 N. Y. 375; 77 id. 255, 256.) If the court of appointment determines that the statutory case has arisen, then the appointment of commissioners is a duty, although the statutory words are not mandatory in their nature. (*Alderman Blackwell's Case*, 1 Vernon, 153; *State* v. *Newark*, 4 Dutch. 491; *Phelps* v. *Hawley*, 52 N. Y. 27; 72 id. 536; 68 id. 119; *MacDougall* v. *Paterson*, 11 C. B. [73 Eng. Com. L.] 772.) The evidence did not show that the consent of the railroad companies *could not* be obtained as the statute requires, but showed only that their consent *had not* been obtained without stating when, how or why. (Laws of 1884, chap. 252, § 10.)

*Horace Russell* for respondent.   The statute and the Constitution confer upon the General Term of the Supreme Court discretionary power to grant or refuse an application for the appointment of commissioners. (Laws of 1884, chap. 252, § 4; Const., art. 3, § 18; *Settle* v. *Evrea*, 49 N. Y. 280; *Countryman* v. *Norton*, 21 Hun, 19; *People* v. *Williams*, 24 N. Y. 409; Bishop on Written Laws, § 90; *In re N. Y. C. & H. R. R. R. Co.*, 64 N. Y. 60; *In re N. Y., L. & W. R. R. Co.*, 29 Hun, 604; affirmed, 93 N. Y. 384; *In re P. P. & C. I. R. R. Co.*, 13 Hun, 345; *In re Rhinebeck & Conn. R. R. Co.*, 67 N. Y. 247; *In re B., N. Y. & R. R. R. Co.*, 32 Hun, 289; *Speers* v. *Mayor, etc.*, 72 N. Y. 442; *People, ex rel. D. W. & P. R. R. Co.*, v. *Batchellor*, 53 id. 128; *Ludlow* v. *Ludlow*, 1 South. [N. J.] 387; *Matter of Kings Co. El. R. R.*, 82 N. Y. 95; *Matter of City of Buffalo*, 64 id. 547.)   If the Supreme Court had a judicial or discretionary power to deny the application its discretion is not reviewable here. (Code of Civ. Pro., § 1337; *Direct U. S. Cable Co.* v. *Dom. Tel. Co.*, 84 N. Y. 154; *Fisher* v. *Gould*, 81 id. 228.)   It was proper for the Supreme Court to take into consideration, upon this application, the fact that four-fifths of the route proposed by the petitioners was already occupied by street surface railway companies, which declined to give their consent to the construction of this proposed road.   (Laws of 1884, chap. 252, § 14; *Thirteenth and Fifteenth St. R. R. Co.* v. *City of Philadelphia*, 13 W. N. Cas. 487.)   It is not a valid objection to an act complete in itself that it does not go into effect until the happening of a contingency, certain or uncertain. (*People* v. *Fire Ass'n Philadelphia*, 92 N. Y. 316; *Bk. of Chenango* v. *Brown*, 26 id. 467; *Bk. of Rome* v. *Vil. of Rome*, 18 id. 38; *Starin* v. *Town of Genoa*, 23 id. 439; *Gould* v. *Town of Sterling*, id. 456; *Grant* v. *Courter*, 24 Barb. 232; *Clark* v. *Rochester*, id. 446; affirmed, 28 N. Y. 605; *Corning* v. *Green*, 23 Barb. 33; *Barto* v. *Himrod*, 4 Seld. 483; *Lothrop* v. *Stedman*, 42 Conn. 584; *Northern Cent. R. R. Co.* v. *Mayor, etc.*, 21 Md. 94; *City of Philadelphia* v. *Street R. R. Co.*, 4 Brewst. 14, 18; *State, ex rel. Morgan*, v.

*Monmouth Plankroad*, 26 N. J. L. [2 Dutch.] 99 ; *Currier* v. *West Side El. R. R. Co.*, 6 Blatchf. C. C. 489, 493.) The legislation under discussion is no more a delegation of power than is that requiring the consent of property-owners before a railroad could be built in cities. (Laws of 1854, chap. 140 ; 2 R. S. [7th ed.] 1584.) A question as to the consent was raised proper to be determined on the application for the appointment of commissioners. It was not premature and it was properly raised by affidavits. (*In re City of Buffalo*, 64 N. Y. 546, 550 ; 68 id. 167 ; *Cal. Pac. R. R.* v. *Cent. Pac. R. R.*, 47 Cal. 543.) The question as to whether there are legal obstacles against a proposed route is for the court alone to decide. (*In re L. S. & M. S. R. Co.*, 89 N. Y. 442.) It was within the power of the court below to determine how that question should be raised. It could be done by affidavits. (*Matter of El. R. R. Co.*, 70 N. Y. 357 ; *Matter of City of Buffalo*, 64 id. 547.) The Supreme Court did not abuse its discretion in denying the application. (Code of Civ. Pro., § 1703 ; 3 Abb. Ct. App. Dec. 585.)

Andrews, J. The order of the General Term, from which this appeal is taken, denied the application of the Thirty-fourth Street Railroad Company, a corporation organized under the Street Surface Railway Act, passed May 6, 1884, for the appointment of commissioners to determine whether the proposed road of the petitioner ought to be constructed. The petition upon which the application was made, avers the incorporation of the petitioner under the act of 1884 ; that its route extends from the ferry on Hudson river, at Forty-second street in the city of New York, to Tenth avenue, and thence to Thirty-fourth street, and through Thirty-fourth street from the Hudson river to the East river ; that it had obtained the consent of the mayor, aldermen and commonalty of the city of New York, to the construction and operation of its road, but had been unable, after diligent effort, to obtain the requisite consent of the owners of property bounded on that portion of the street upon which the proposed road was to be constructed ; that due notice of the

application had been given pursuant to the fifth section of the act, and concludes with a prayer for the appointment of commissioners under its provisions. The granting of the application was resisted by the owners of abutting property on Thirty-fourth street, on two grounds : *First*. That the route of the proposed road of the petitioner is coincident in part with the routes of existing surface street railroads in actual operation, constructed prior to the passage of the act of 1884, whose consent to the construction of the petitioner's road had not been obtained, but had been refused, and *second*, that the proposed road would greatly damage property abutting on the streets through which it was to be constructed, and that neither public necessity nor convenience required the construction of a street railroad on the route of the petitioner. On the hearing of the application the petitioner proved the substantial averments of the petition, and on the part of the contestants it was shown that the part of the petitioner's route on Forty-second street and Tenth avenue, comprising about three-fifths of its whole line, was coincident with the route of other street railroad corporations, who had constructed and were operating roads thereon under their several franchises, and that these corporations had refused to consent to the construction of the road of the petitioner. The contestants also gave evidence tending to show that the proposed road would seriously impair the value of private property on Thirty-fourth street, and that no public interest required its construction. The majority of the judges of the General Term concurred in opinion that the authority vested in the court by the act of 1884, to appoint commissioners to determine whether a proposed surface street railroad ought to be constructed and operated, in case the requisite consents of property-owners could not be obtained, was discretionary, and not imperative, and that as it had been made to appear that the consent of the other railroad companies operating coincident routes, could not be obtained, and as under the act the obtaining of such consent was a condition precedent to the right of the petitioner to proceed with the construction of its road, the application should be denied in accordance with the maxim, *Lex neminem cogit ad*

*vana.* One of the two judges who concurred in the decision, was of opinion that the application should be denied upon the further ground that it appeared by the affidavits on the part of the contestants, that the property abutting on Thirty-fourth street, on the line of the proposed road, would be greatly depreciated in value by its construction and operation. We cannot review an order resting in the discretion of the court below, and the point to be determined is, whether upon the case presented, the petitioner was, as matter of law, entitled to an order appointing commissioners pursuant to the application. The determination of this question involves a consideration to some extent of the legislative scheme embraced in the act of 1884. The legislature in dealing with the subject of street railways, was under certain restrictions imposed by article 3, section 18, of the Constitution. It is sufficiently exact for our present purpose to state that under the constitutional provision, authority to construct and operate street railroads must be conferred by general laws, and then only on condition of obtaining the consent of the local authorities, and also of the owners of one-half in value of the property bounded on that portion of the street or highway upon which the proposed road is to be constructed, or in case the consent of property-owners cannot be obtained, the section declares that " the General Term of the Supreme Court, in the district in which it (the railroad) is proposed to be constructed, may, upon application, appoint three commissioners, who shall determine whether such railroad ought to be constructed or operated, and their determination, confirmed by the court, may be taken in lieu of the consent of the property-owners." The act of 1884 is a general law for the construction of surface street railways, and embodies the constitutional conditions of consent by the local authorities and of the property-owners, with the proviso, also authorized by the Constitution, for a determination by commissioners to stand in lieu of the consent of property-owners, in case such consent cannot be obtained. In addition to the constitutional conditions, the act annexes a third condition not enjoined therein, viz. : that no surface street railroad company shall

conduct, extend, or operate its road or tracks in that portion of any street, avenue, road, or highway in which a street railroad is or shall be lawfully constructed, except with the consent of the company owning and maintaining the same, with a qualification not material to the present inquiry (§ 14). The fourth and fifth sections of the act are framed to give effect to the last clause of article 3, section 18 of the Constitution, relating to the appointment of commissioners. The fourth section authorizes the company, in case the consent of property-owners required by the act cannot be obtained, to apply to the General Term of the Supreme Court " for the appointment of three commissioners, to determine, after a hearing of all parties interested, whether such railroad ought to be constructed and operated." The fifth section directs that notice of the application shall be given, and served upon the nonconsenting property-owners, and that the General Term to which the application shall be made, upon due proof of the service of the notice, " shall appoint " three disinterested persons to act as commissioners. The sixth section declares that the commissioners shall determine, after a public hearing of all the parties in interest, whether the proposed railroad ought to be constructed and operated, and shall make a report thereon, with the evidence, to the General Term, and that the determination of the commissioners that the road ought to be constructed and operated, confirmed by the said court, " shall be taken in lieu of the consent of the property-owners." The right of the Thirty-fourth Street Railroad Company, under the act of 1884, to construct and operate its road, was subject, therefore, to three precedent conditions, the consent of the local authorities, the consent of property-owners, or, in lieu thereof, the determination of commissioners in its favor, and the consent of the companies having coincident routes. It is clear that all these conditions must be performed before any right to proceed with the construction of the road, or any part thereof, can be exercised. This proposition, however, assumes that the condition requiring the consent of railroad companies having coincident routes was lawful. This point was consid-

ered by the General Term, and the power of the legislature
to annex this condition was affirmed, and we concur in the
conclusion of the court below upon this branch of the case.
The opposite view is urged upon two grounds, *first*, that the
Constitution has prescribed the conditions upon which street
railroads may be constructed, and by implication excludes the
imposition by the legislature of conditions other than those
prescribed therein, and *second*, that a condition requiring the
consent of existing railroad companies, to the construction or
operation of another road, is a grant of legislative power to the
company whose consent is required, and is therefore void. The
first contention proceeds upon a misconception of the object of
the constitutional provision, and of the rules governing the in-
terpretation of constitutional restraints upon legislative power.
The plain purpose of the Constitution in requiring the con-
sent of the local authorities and of property-owners to the
construction of a street railroad, was the protection of public
and private interests against hostile and injurious legislation,
and to prevent the appropriation of highways to railroad uses
by legislative grant, without consulting the interests of the
locality.   The consent of the local authorities and of property-
owners was therefore made necessary, but to meet the contin-
gency of an unreasonable opposition on the part of property-
owners, a tribunal was authorized to be created to determine
whether the public interests required the construction of the
proposed road, whose determination in its favor, when con-
firmed by the court, was to stand as a substitute for such con-
sent.   But the Constitution, neither by express language nor
by implication abridges the legislative power over the subject
outside of the matters particularly enumerated.   It needs no
citation of authorities to sustain the postulate, that except as
restrained by the Constitution, the legislative power is untram-
meled and supreme, and that a constitutional provision which
withdraws from the cognizance of the legislature a particular
subject, or which qualifies or regulates the exercise of legisla-
tive power in respect to a particular incident of that subject,
leaves all other matters and incidents under its control.   Noth-

ing is subtracted from the sum of legislative power, except that which is expressly or by necessary implication withdrawn. The legislature is prohibited from granting a franchise to construct a street railroad, except upon certain specified conditions. But it is not prohibited from annexing further conditions not inconsistent therewith, and whether other conditions are necessary or proper, is a matter resting in the wisdom and discretion of the legislature. The claim that the provision in the act of 1884, requiring a company organized thereunder, whose route is coincident with that of another road, to obtain the consent of the latter to the construction of the new road, before it can proceed to construct or operate the same, constitutes a delegation of legislative power, is not we think well founded. The act of 1884 was complete and operative from the moment of its passage. The franchise acquired by a company organized under its provisions, is perfect according to the nature of the franchise intended to be given, from the moment the corporation comes into existence. The legislative grant was conditional, and not absolute. The consent of another company in a case where such consent is required, confers no franchise upon the company by whom it is obtained. The consent simply meets one of the conditions prescribed by the statute upon which the right of the company to construct and operate its road depends. If consent is refused, the law is not defeated, but remains perfect and complete as before. The company upon consent being refused, is not deprived of its franchise. A failure to obtain such consent simply puts in abeyance its right to proceed with the construction of the proposed road until the obstruction is removed, and this precise situation was within the contemplation of the legislature when the act was passed. The legislature imposed the condition in its discretion, for the protection of existing companies. It may hereafter in its discretion remove the restriction and abrogate the condition. But its right to impose it is unquestionable. Whether the legislature in creating this condition, proceeded upon public reasons, or had in view the protection of private interests only, does

not affect the question of legislative power. The legislature by the act of 1884, in substance determined that it was inexpedient to permit a competing street railroad to be constructed on the line of another road, unless the existing road should consent. This was a contingency subject to which the petitioner acquired its franchise. The existing company, whether it consents or refuses to consent, neither creates the franchise, nor defeats it, and whether it consents or not, there enters into its decision no element of legislative power. In the legislation considered in *Barto* v. *Himrod* (8 N. Y. 483), the vice consisted in the legislature remitting to the decision of the people at a popular election, the question whether a certain enactment should have the force of law. The legislature in that case abdicated its function as the law-making power, and in substance proposed a law for enactment or rejection by the people. The law now in question contains no such element, and there are numerous precedents of analogous legislation to be found in our statutes. (See *Matter of New York Elevated Railroad Co.*, 70 N. Y. 343 ; *Matter of Gilbert Elevated Railroad,* id. 374; *Bank of Rome* v. *Village of Rome,* 18 id. 38 ; *City of Phila.* v. *Street R. R. Co.*, 4 Brewst. 14; *State, ex rel. Morgan,* v. *Monmouth Plankroad*, 2 Dutch. 99.) The grounds upon which the decision at General Term mainly proceeded in denying the application, viz. : that the appointment of commissioners would be futile by reason of the non-consent of the other roads occupying coincident lines, and that the construction of the petitioner's road would occasion great injury to private property, remain to be considered. We think it cannot be justly claimed that, under the Constitution, the court, on the application for the appointment of commissioners, is vested with any discretion to grant or deny the motion upon a consideration of the question of the utility or necessity of the proposed road. The act of 1884 is to be construed in the light of the scheme of the Constitution, with reference to which the act was passed. The Constitution declares the general principle, that street railroads shall not be constructed without the consent of prop-

erty-owners interested.  But it recognizes that there may be a conflict between public and private interests, and that the public convenience may require the construction of a street railroad in a case where the consent of the property-owners cannot be obtained.  To meet this contingency it creates a tribunal to determine this question, consisting of commissioners to be appointed by the court.  The language of the Constitution, that the court upon application *may* appoint commissioners, does not confer upon the court a discretion to appoint, or not, as it shall deem just or discreet.  It confers authority to appoint when a case is presented, contemplated by the Constitution.  When either by the Constitution, or by statute, jurisdiction is conferred upon a court, the court cannot entertain or decline jurisdiction in its discretion.  It is bound to exercise it when the case arises and its exercise is invoked by a party interested and having the right to make the application. (See *Macdougall* v. *Paterson*, 11 C. B. 755, 772 ; *Queen* v. *The Tithe Com'rs*, 14 Q. B. 620.) The constitutional scheme contemplates that the determination whether a proposed railroad ought to be constructed in case the consent of property-owners cannot be obtained, shall in the first instance be decided by commissioners.  We concur on this point with the view of the learned judge who dissented in this case that the Constitution confers upon the court primarily a mere naked power of appointment, and that it gives no power to the court to hear, try or determine in the first instance, the question that is to be sent to the commissioners. The power of the court to pass upon the merits of the application arises only after the commissioners have made their report and returned the evidence taken by them, and this power, though not expressly given, is implied from the provision that the determination of the commissioners, "confirmed by the court," may be taken in lieu of the consent of the property-owners.  While on the one hand, the decision by the court in the first instance, that the proposed road ought to be constructed would not satisfy the constitutional provision and justify the construction of the road, on the other, a contrary de-

termination cannot deprive the applicant of the right to have the question determined in the first instance by the tribunal designated in the Constitution.   We find nothing in the act of 1834, in conflict with the plain sense of the Constitution.   It is supposed that the provision in the fifth section, requiring notice to be given of the application, to non-consenting property-owners, implies a right on their part to be heard on the question of the propriety or necessity of the proposed road, and to have the question decided at that stage of the proceedings. It is not necessary to attribute this purpose to the legislature in requiring notice to property-owners.   The requirement of notice enables property-owners to appear on the hearing and oppose the application on the ground that the petitioner is not in a situation to make it, and also to be heard in respect to the selection of commissioners.   It cannot be assumed that the legislature intended by the provision for notice, to confer upon the court a power inconsistent with the scheme of the Constitution. The ground that the appointment of commissioners would be futile by reason of the fact that other companies had refused their consent to the construction and operation of the road of the petitioner, is not, we think, a sufficient answer to the application.   Inability to obtain the consent of property-owners, is, under the statute, the only pre-requisite to the application for the appointment of commissioners. The consent of other railroad companies having coincident routes is another, but independent condition for which the statute provides no alternative or substitute.   Nor does it prescribe the order in which the several consents shall be obtained.   It may be granted that if it had been made to appear that an insurmountable difficulty stood in the way of the construction and operation of the road of the petitioner, and not a mere present obstacle to the exercise of the franchise, the court would not have been bound to grant the application.   But the fact that the other companies had prior to the application, refused the consent, does not show that the appointment of commissioners would be a vain and useless proceeding.   The decision of the competing roads was in its nature revocable.   The

question on their part was one of prudence and policy, and it is quite conceivable that circumstances might subsequently arise, which would lead to a reversal of the prior decision, and to the giving of a consent, which had been previously withheld. The determination of commissioners that the proposed road ought to be constructed, if sanctioned by the court, might itself operate as a reason for changing the prior decision. The petitioning company could not safely enter into engagements with other companies for the acquisition of the right to construct its road on the street occupied by their tracks, so long as it remained uncertain whether it could obtain a favorable determination of commissioners as a substitute for the consent of property-owners. We are of opinion that the court erred in refusing to appoint commissioners, and that the order appealed from should, therefore, be reversed, and the case remitted to the General Term for further proceedings.

All concur.

Ordered accordingly.