In the Matter of the NEW YORK DISTRICT RAILWAY COMPANY, for the Appointment of Three Commissioners to Determine Whether its Railroad Ought to be Allowed to be Built, etc.

*When an underground railroad is a street railroad within section 18 of article 3 of the Constitution — chapter 582 of 1880 is unconstitutional as violating this section.*

The petitioner, a corporation duly organized and incorporated under chapter 140 of 1850, to construct, maintain and operate a railroad for public use between certain points in the city of New York, having adopted plans which rendered it necessary to build said route underground, and to run the same by a tunnel underneath the streets, roads and public places of the city, and having made diligent efforts to obtain the consent of the owners of one-half in value of the property bounded on the line of the streets, roads and public places through which it was proposed to construct such railroad, and being unable to obtain the consent of such property owners, applied to the General Term of the Supreme Court to appoint three commissioners who should determine, after a hearing of all parties interested, whether such railroad ought to be allowed to be built underneath said streets, roads and public places, as provided in section 1 of chapter 582 of 1880.

*Held,* that the underground railway, which the petitioner proposed to construct, was "a street railroad," within the meaning of those words as used in section 18 of article 3 of the Constitution of the State of New York, forbidding the passage of any law authorizing the construction and operation of a street railroad, except upon the condition that the consent of the owners of one-half in value of the property bounded on, and of the local authorities having the control of that portion of the street or highway upon which it is proposed to construct and operate it be first obtained, and providing that in case the consent of the property owners cannot be obtained then the determination of the commissioners, to be appointed as therein provided, shall be taken in lieu thereof.

That so much of the first section of chapter 582 of 1880, as provided that "the determination by said commissioners, confirmed by the court, may be taken in lieu of the consent *of said authorities* and property owners," is unconstitutional and void.

That the court could not sever the effect which the act gives to its confirmation of the commissioners decision, holding the confirmation effective as a substitute for the consent of the property owners and ineffective as a substitute for the consent of the city authorities.

That the application for their appointment should, therefore, be denied, as legal machinery should not be set in motion to bring about a result forbidden by the organic law.

MOTION, on the part of the corporation above named, for the appointment of three commissioners to determine whether it should be allowed to build its railroad.

The petition of the New York District Railway Company alleged that the petitioner was a corporation duly organized and incorporated under, pursuant to and in conformity with an act of the legislature of the State of New York, passed April 2, 1850, entitled " An act to authorize the formation of railroad corporations and to regulate the same," and 'all the several acts of said legislature supplementary thereto and amendatory thereof ; that it was so organized and incorporated to construct, maintain and operate a railroad for public use in the conveyance of persons and property, between certain points in the city of New York, to wit: Beginning on Broadway ; * * * that according to the route and plans adopted by such petitioner for the building of its said railroad, it is necessary to build said road under ground, and to run the same by tunnel underneath the streets, roads and public places above named, and that said petitioner intends so to build the same, and at all times to keep the same in such condition as to make the surface of the ground above said road, and in the neighborhood thereof, firm and safe for buildings and other erections thereon, and, in case surface excavations are made, that as soon as can be done, the surface shall be restored to its former condition, except so far as may be actually required for ventilation of the tunnel beneath the same or for access thereto ; that under the provisions of the act of the legislature of the State of New York, passed June 25, 1880, entitled " An act to provide for excavating and tunneling and bridging for transportation purposes within villages and cities of this State," it is necessary that said petitioner, before building its said railroad, shall obtain the consent of the owners of one-half in value of the property bounded on the line and of the proper authorities having control of the streets, roads and public places aforesaid ; or, in case such consent of the owners of property bounded on the line cannot be obtained, the General Term of this honorable court may, upon application, appoint three commissioners who shall determine, after a hearing of all parties interested, whether said petitioner's said railroad ought to be allowed to be built underneath said streets, roads and public places, or any of them, and in what manner the same may

be so built with the least damage to the surface and to the use of the surface by the public; and the determination by said commissioners, confirmed by this honorable court, may be taken in lieu of the consent of said authorities and property owners; that said petitioner has made diligent efforts to obtain such consent of owners as aforesaid, but has been unable to obtain, and has failed to obtain, such consent, and that such consent cannot be obtained because of the refusal of the owners of more than one-half in value of the property bounded on the main line of said petitioner's said railroad to consent thereto, as appears by the several affidavits  *  *  * all hereto annexed and made part of this petition.

Wherefore, said petitioner prayed that this court will appoint three commissioners to determine, after a hearing of all parties interested, whether said petitioner's railroad ought to be allowed to be built underneath the streets, roads and public places aforesaid, or any of them, and in what manner the same may be so built with the least damage to the surface and to the use of the surface by the public; and further and after like hearing, and after duly consider- ing and making allowance for all advantages to accrue to the city of New York from the complete readjustment and improved arrange- ment of all sewerage, water and other conduits, pipes and con- ductors, laid or to be laid underneath the streets, roads and public places aforesaid, and of the means of access thereto, to report their conclusions as to what security, if any, should be given, and what compensation, if any, should be made to said city of New York by said petitioner, if allowed to build its said railroad, and as to when and in what manner such compensation, if any, should be paid, and that said petitioner may have such other or further relief, or both, in the premises as may be just.

*Grosvenor P. Lowery* and *Charles Francis Stone,* for the motion.

*Robert Sewell* and *Charles P. Daly,* for the New York Arcade Railway Company.

*Thomas P. Wickes,* for the city of New York.

*Horace Russell* and *Jabish Holmes, Jr.,* for Henry Hilton and other opposing property owners.

*Henry D. Sedgwick*, for the New York Underground Railway Company.

*O. Vandenburgh*, for the Broadway Underground Connecting Railway Company, opposed.

BARRETT, J.:

The main question presented by this application is whether an underground railroad, such as that which the petitioner contemplates constructing under what is commonly called the tunneling act of 1880 (chap. 582), is a street railroad within the meaning of article 3, section 18 of the Constitution. If it is, then the petitioner concedes that that part of section 1 of the act of 1880, which substitutes the favorable determination of commissioners, when confirmed by the General Term, for the consent of both the local authorities and property owners, is unconstitutional; that is, unless the provision can be severed and the substitute confined to the consent of the property owners. If unconstitutional, the application, being within the exception suggested in the *Thirty-fourth Street Case* (102 N. Y., 343), should be denied, for certainly legal machinery should not be set in motion to bring about a result forbidden by the organic law.

The question has been very ably and exhaustively treated by the learned counsel for the petitioner, and I confess that his argument has induced me to subject my first impression to rigid analysis. After full consideration, however, I am satisfied that a broader view should be taken of the amendment of 1874 than is thus contended for, and that it was never intended to limit the wholesome provisions of article 3, section 18, to surface and elevated railroads. Underground railroads in cities are quite as gigantic enterprises, and involve as valuable franchises and as important public and private interests as any surface or elevated railroad. The mischiefs aimed at by the amendment apply with equal, and in some respects with greater force to underground railroads. The local authorities have a greater interest in the sewerage, water and gas systems beneath the surface than in anything upon the surface likely to be affected by a railroad. The property owners upon the line have also a deep interest in the protection of their vaults, the security of their buildings, the safety of the street surface and in

the methods to be adopted for ventilating the tunnels. The latter question is especially important in a case where, as authorized by this act (sec. 1), surface openings are adopted and the ordinary street use is correspondingly limited. And why is not an underground railroad a street railroad within both the letter and the spirit of the Constitution? The petitioner says because it is not within the popular conception of the term, nor within the conception of the term drawn from legislative or official action. But the popular conception of a street railroad, and the intention with which the amendment was framed and voted for, are entirely different things. The same rules of construction which are applicable to statutes govern in constitutional interpretation. The intent is to prevail over the literal meaning of words. The general purpose of the constitutional amendment, the evils which existed and the remedy which was sought, are all to be considered. (*People ex rel. Jackson* v. *Potter*, 47 N. Y., 375.) Now, it would be not only a narrow construction, but a very loose, uncertain and varying one, which would limit the phrase "street railroad," as embodied in this amendment, to what the petitioner terms "the image responsive to the phrase," which each voter must have had in his mind. The intention could not have been thus to impair the usefulness of the measure, nor to limit its beneficent operation by a literal definition of the term "street railroad." It was, rather, within any fair view of the entire subject, to embrace every kind of street railroad, surface, elevated or underground, in the existence or non-existence of which the local authorities and the property owners might have an interest. It contemplated not only such structures and systems as had been or were then in existence, but such, also, as the future of science and enterprise might call into existence, however novel and however foreign to the present conception of the voter.

Looked at accurately and free from the confusion of popular phraseology, an underground railroad is not beneath the street. It is beneath the surface of the street, but it is *upon the street.* Any depression from the surface would be equally within the reasoning that a railroad which does not rest upon the surface is not a street railroad. Whether the cut be of six inches or of six feet, whether open or closed, whether tunneled by the entire

or partial retention of the surface as a vaulted ceiling, would only raise a question of degree.

It is true that in the illustration of an open cut there would be a loss to the people of the ordinary surface use, but the illustration serves when we are, in substance, asked to interpolate in the amendment, after the term street railroad, the words "resting on the surface of the street." There is therefore nothing, in my judgment, in the argument from popular conception, which militates against the view that all structures making use of, or resting anywhere upon the street, from the surface downward, are within the constitutional provision.

But little light is thrown upon the question by the historical reference to which our attention has been called. If the solution depended upon the phraseology of past legislation, we should say that the references, which the industry of counsel has placed before us, about balance each other. But the present question is not concluded by phrases in legislative acts and official reports, any more than it is by popular images responsive to the term "street railroad." It is, indeed, of very little consequence whether the legislature, in speaking of street railroads, uses the words "*in* the street" or the words "*upon* the street." We find the words "in," "through," "along" and "upon" running almost equivalently through past legislation.

It is also natural to find existing structures classified in particular language. But it by no means follows that it was intended to limit the operation of the amendment to structures covered by such classification. What is more important than these legislative definitions, as bearing upon the present question, is the course of legislative action with regard to the consent of the local authorities and the property owners. It was to fix these vital rights, sometimes conceded and sometimes denied, to place them beyond the power of legislative infringement that the people acted. It may safely be asserted that these were the "images" which the voters had in their minds, rather than any particular motive power or style of railroad structure, or system of transportation. It was the great principle of restricting corporate aggression and expanding popular rights that was voted for and adopted. Limitation of the subjects upon which such great and wholesome principles were to operate

would have been wholly inconsistent, under all the circumstances, with the declaration of the principles themselves.

The doctrine of legislative exposition is also invoked by the petitioner. . This is a doctrine peculiarly applicable to cases of doubt (which we do not find here), and one which should certainly not be expanded to the extent of practically clothing the legislature with judicial functions. Where the legislation is almost contemporaneous with the Constitutional provision, it is, of course, entitled to greater weight than an act passed, as was that under consideration five years later. Indeed, the only act which comes within the contemporaneous principle is the rapid transit act of 1875, and there underground roads, as well as elevated and surface roads, are treated as within the constitutional amendment in question. It is fair to assume that the legislature, when thus considering the great rapid transit scheme, with the amendment just adopted before it, required the same conditions to be performed by all railroads, whether above, upon or beneath the surface, because, in its judgment, the Constitution required all such railroads to be treated alike.

Having thus concluded that the act of 1880, in the particulars discussed, is unconstitutional, I do not think that the petitioner's case is within the principle that when part of an act is constitutional and part unconstitutional, that part which is valid should be upheld, provided it is separable from that which is invalid. This principle would enable the petitioner to proceed under the act up to the point where an application for the appointment of commissioners is essential. It may obtain the consent of the local authorities and of the requisite number of property owners. These provisions are valid and separable from what follows. But when an application for the appointment of commissioners becomes necessary, the petitioner must take the provision on that head as it is. The court cannot sever the effect which the act gives to the confirmation of the commissioners' judgment. We cannot say that there shall be a constitutional effect when the act declares that there shall be an unconstitutional one. This question is not affected by the petitioner's present disclaimer. The act does not substitute the confirmation of the commissioners' judgment for the consent either of the local authorities or of the property owners, but for that of both. The court cannot be asked to produce this result merely

because the petitioner protests that it will not insist upon the unconstitutional half, especially as the petitioner by no means concedes the unconstitutionality of this half, but, on the contrary, in contending that its railroad is not a street railroad at all, within the amendment, necessarily assumes the position that the legislature was not constitutionally bound to require either the consent of the local authorities or of the property owners, or any judicial substitute for the latter. In other words, that as to underground railroads in cities, the people are as completely at the mercy of the legislature (except as to special legislation) as they were before the constitutional amendment was adopted.

For these reasons I am of opinion that the application for the appointment of commissioners should be denied.

BRADY, J., concurred.

Motion for the appointment of commissioners denied.