(Supreme Court, Appellate Division, First Department. December 6, 1901.)

STREET RAILROADS—CONSTRUCTION—CONSENT OF PROPERTY OWNERS—MOTIVE POWER.

Laws 1890, c. 565, § 94 (Railroad Law), authorizes the appointment of commissioners to determine whether a street railway shall be constructed in certain streets notwithstanding the refusal of the consent of the owners of abutting property. Section 100 provides that such railroad may operate any portion of its road by any power, other than steam, which may be approved by the state board of railroad commissioners and consented to by the owners of one-half the property bounded on the

street. *Held* that, where the railroad commissioners had authorized a railroad to use electricity, a refusal of the property owners to consent to the construction of a road to be operated by electricity, "or any motive power other than steam that might be approved by the railroad commissioners," was not a refusal to consent to the operation of the road by electricity, so as to authorize the appointment of commissioners, under section 94.

Application by the Kingsbridge Railway Company for the appointment of commissioners to determine whether its road should be constructed in certain streets of the city of New York, notwithstanding the refusal of property owners to consent. Denied.

Argued before HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Chas. F. Brown, for application.

Louis L. Delafield, John H. Iselin, and Jabish Holmes, Jr., for respondent.

INGRAHAM, J.   This application is made for the appointment of commissioners to determine whether the railroad of the applicant should be constructed in certain avenues and streets in the city of New York, notwithstanding a refusal of the owners of property bounded thereon to consent thereto.   There are several objections taken by the property owners, one of which we think fatal to the application.   This objection is that the motion papers are fatally defective because they do not show that the consent of a majority in value of the owners of abutting property to the construction and operation of the railroad was refused, and this is based upon the fact that the request made to the property owners which was refused was a consent to "construct and operate a street surface railroad to be operated by electricity or any motive power than locomotive steam power that may be approved by the state board of railroad commissioners."   It appears that the petitioner was authorized by the state board of railroad commissioners to operate the proposed road by electricity, and the objection is based upon the provision of the statute that, where a road was authorized to be operated by electricity, any other or different motive power could not be authorized without the consent of the property owners or the approval of commissioners appointed to determine the question, in case their consent was refused.   This proceeding is regulated by the railroad law (chapter 565, Laws 1890). The petitioner was incorporated under section 2 of the railroad law, and by section 100 it is provided that a "street surface railroad may operate any portion of its road by animal or horse power, or by cable, electricity, or any power other than locomotive steam power, which may be approved by the state board of railroad commissioners and consented to by the owners of one-half of the property bounded on that portion of the railroad with respect to which a change of motive power is proposed."   It would seem from this provision that before the petitioner could construct or operate its road it must obtain the consent of the railroad commissioners as to the motive power to be used in its operation.

After the certificate of incorporation was filed the petitioner made an application to the railroad commissioners, asking for their ap-

proval of the use of electricity as a motive power, for a portion of the road an underground current of electricity, and for another portion of the road an overhead trolley system. This application was granted, and the proposed motive power approved, and when this application was made to the property owners the only motive power that the petitioners were authorized to use was electricity, and it was a railroad thus operated to which the property owners should have been requested to consent. The request, however, was for a consent to operate this railroad by "electricity, or any power other than locomotive steam power, which may be approved by the state board of railroad commissioners." A refusal to sign this consent cannot be said to be a refusal to consent to the construction and operation of the road which the petitioners were authorized to construct and operate.

This proceeding for the appointment of commissioners is regulated by section 94 of the railroad law, and the court is only authorized to appoint commissioners if the consent of the property owners cannot be obtained. Proof that such a consent, namely, to operate a railroad, as authorized at the time the application is made, is an essential prerequisite to the application for the appointment of commissioners; and this was recognized in Re Thirty-Fourth St. R. Co., 102 N. Y. 343, 7 N. E. 172, where it was also held that the property owners upon such an application have a right to appear upon the hearing and oppose the application upon the ground that the petitioner is not in a situation to make it. It was not intended by the statute to justify the appointment of commissioners because the property owners had refused to consent to the operation of an entirely different road from that which the petitioners were authorized to construct at the time the application was made. By section 100 of the railroad act, it is provided that, before any street railroad authorized to use one motive power can be authorized to use another and different motive power, the owners of abutting property must either consent, or else commissioners appointed to determine the question of the change of motive power must report in favor of such change, and their report be approved by this court. There is nothing to show that the property owners would not have consented to the construction of a railroad to be operated by electricity. They were asked, however, to consent to a railroad to be constructed and operated by electricity or such other motive power as the railroad commissioners should approve. They might well refuse, while consenting to a railroad operated by electricity, to waive their right to object at a subsequent time if it were proposed to change the motive power to one more objectionable. The statutory provisions requiring the consent of the property owners, or a determination of the appellate division of the supreme court based upon the report of commissioners that the road should be built notwithstanding the property owners refuse to consent, was intended to protect the property abutting upon a street upon which it was intended to build a railroad, and to give the owners an opportunity to be heard before a competent tribunal as to whether the public interest required a road to be built notwithstanding the objection of the owners of the property bounded

by the street. Both the constitution and the statutes contemplated a submission of the question to the property owners in the first instance to determine whether or not the road should be built, and it is the road then authorized to be constructed to which that determination relates, and it is only in the event of their refusal to consent that this court is authorized to appoint commissioners to determine the question; and the refusal of the property owners to consent to another and entirely different road than that authorized to be constructed—a road to be operated by a motive power of an entirely different character—is no evidence of a refusal of the property owners to consent to the construction and operation of a railroad authorized and which the railroad company proposed to construct.

It follows that the application must be denied. All concur.