In the Matter of the Application of HENRY D. QUINBY, Individually and as Comptroller of the City of Rochester, et al., Appellants, for a Writ of Prohibition against the PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK FOR THE SECOND DISTRICT et al., Respondents.

**Street surface railroads — public service commission — writ of prohibition — rates of fare — jurisdiction and power of public service commissions upon application of street railways to have fare raised from five to six cents — Rochester (city of) — application of street railway to have fare within city raised to six cents — public service commission has no authority to hear and determine such application when contract between city and railway provides that only five-cent fare may be charged — writ of prohibition proper remedy in such cases.**

1. Our Constitution by requiring the consent of the local authorities to construct and operate a street railroad (Const. art. 3, § 18, as amended 1875) recognizes that our municipalities are *pro tanto* independent of legislative control, exercising some fragment of power otherwise legislative in character, which has thus been irrevocably transferred by the fundamental law to the locality. The grant by the municipality of authority to use its streets is not a mere privilege or gratuity, and once accepted becomes a contract which neither the state nor its agencies can impair.  (*People* v. *O'Brien*, 111 N. Y. 1, followed.)

2. The New York State Railways presented a petition to the public service commission of the second district praying that it be permitted to raise to six cents its rate of fare on street surface railways in the city of Rochester. The city filed objections to the jurisdiction

of the commission to entertain such application.   The public service commission decided to hear the case on the merits, after having previously held that it had the power to increase rates, and thus assumed jurisdiction of the application.   The application of the city for a writ of prohibition was denied at Special Term, which order was affirmed by the Appellate Division as matter of law, and the city has appealed to this court.   Its objections were based, *first*, on chapter 350 of the Laws of 1915, amending the. charter of the city of Rochester and fixing a five-cent rate for one ride over the road of any corporation operating a street surface railroad in such city. The legislature, by the Public Service Commissions Law (Cons. Laws, ch. 48, §§ 2, 3, 5, 49, subd. 1) and the Railroad Law (Cons. Laws, ch. 49, § 181), has conferred power on the public service commission in the second district to regulate the rates of fare to be charged by the street railroads within its jurisdiction.   The purpose of the legislature was to provide for the regulation of statutory fares by a board which may be expected to pass equitably upon conflicting claims with its single purpose the common good, even where a maximum rate had been fixed by the legislature.   The jurisdiction of that body is not to be reduced by implication.   (*Willis* v. *City of Rochester*, 219 N. Y. 427, distinguished.)

3.  The second objection is based upon the like terms and conditions contained in the franchise of the street railroad company as a condition of the consent of the local authorities thereto; that the consent of the local authorities was given on condition as to the rates of fare (Const. art. 3, § 18, as amended in 1875), and that the commission has no jurisdiction over the subject-matter of rate regulations in the city of Rochester because the legislature has no power to alter the rates fixed by consent of the company and local authorities.   In the absence of clear and definite language conferring without ambiguity jurisdiction upon the public service commission to increase rates of fare agreed upon by the street railroad and the local authorities, the courts should not hold that the legislature has intended to delegate any of its powers in the matter, whatever its powers may be.   The Public Service Commissions Law (§§ 26, 39, subd. 1) and the Railroad Law (§ 181) deal only with maximum rates of fare established by statute but make no reference in terms to rates established by agreement with local authorities.   It follows that the public service commission is without jurisdiction and that prohibition is the proper remedy.

*Matter of Quinby* v. *Public Service Comm.*, 183 App. Div. ——, reversed.

(Argued March 25, 1918; decided April 5, 1918.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered March 15, 1918, which affirmed, as matter of law, an order of Special Term denying, as matter of law, an application for a writ of prohibition.

The facts, so far as material, are stated in the opinion.

*B. B. Cunningham, Corporation Counsel,* for appellants. The legislature, by a special act passed after the Public Service Commissions Law, has definitely and conclusively fixed the rate of fare in the city of Rochester at five cents. (*Willis* v. *City of Rochester,* 219 N. Y. 427; *People ex rel. Woodward* v. *Draper,* 142 App. Div. 102; 202 N. Y. 612; *Young* v. *Dake,* 5 N. Y. 463; *McDermott* v. *Nassau Electric Railroad Company,* 85 Hun, 422; 147 N. Y. 700; *B. U. Gas Co.* v. *City of New York,* 188 N. Y. 334; *Richman* v. *Consolidated Gas Co.,* 114 App. Div. 216; 186 N. Y. 209; *Pond* v. *New Rochelle Water Co.,* 183 N. Y. 330; *Farnsworth* v. *Boro Oil & Gas Co.,* 216 N. Y. 40; *City of Columbus* v. *Mercantile Trust & Deposit Co.,* 218 U. S. 645.) The railway company has agreed with the city of Rochester to limit to five cents its rate of fare within the city limits, and as a consideration therefor the city under its constitutional powers has granted consents to the street railway company to construct and operate its street railway lines. (*Kittinger* v. *Buffalo Traction Co.,* 160 N. Y. 377; *People ex rel. West Side Street R. Co.,* v. *Barnard,* 110 N. Y. 548; *Wilcox* v. *Richmond Light & Railroad Co.,* 142 App. Div. 44; 202 N. Y. 515; *Public Service Commission* v. *Westchester Street R. R. Co.,* 206 N. Y. 209; *Willis* v. *City of Rochester,* 219 N. Y. 427; *Allegheny City* v. *Millville B. & S. Railway Co.,* 159 Penn. St. 411; *Plymouth Township* v. *Railway,* 168 Penn. St. 181; *Minersville Borough* v. *Railway Co.,* 205 Penn. St. 401; *McKeesport* v. *Railway Co.,* 213 Penn. St. 544.) The

legislature in granting power to the public service commission to increase rates of fare did not intend that such power should apply to rates fixed by contract or in franchises. (*Admiral Realty Co.* v. *City of New York,* 206 N. Y. 110; *People ex rel. U. & D. R. R. Co.* v. *P. S. Comm.,* 171 App. Div. 607; 218 N. Y. 643.) · Prohibition is the proper remedy when the tribunal sought to be prohibited has assumed jurisdiction not conferred upon it or is attempting to exercise authority in excess of the jurisdiction conferred. (*Matter of McIntyre* v. *Sawyer,* 179 App. Div. 535; *People ex rel. Jones* v. *Sherman,* 66 App. Div. 231; *People ex rel. Metz* v. *Dayton,* 120 App. Div. 814; 189 N. Y. 460; *Sweet* v. *Hulbert,* 51 Barb. 312; *People ex rel. Higgins* v. *McAdam,* 22 Hun, 559; *People ex rel. Ballin* v. *Smith,* 184 N. Y. 96; *People ex rel. Toy* v. *Mayor, etc.,* 71 Hun, 182; *People ex rel. Sprague* v. *Fitzgerald,* 15 App. Div. 539.)

*William P. Burr, Corporation Counsel (Terence Farley and Edgar J. Kohler of counsel), for City of New York,* intervening. The holding of the Appellate Division, third department, in the decision now appealed from, and in *People ex rel. N. Y. & North Shore Traction Company* v. *Public Service Commission* (175 App. Div. 869), in so far as they assert the proposition that the local authorities are prohibited, under article 3, section 18, of the Constitution, from attaching conditions to their consents, regulating rates of fares, ignores the authoritative effect of decisions of this court, is furthermore unsound in principle, and is subversive of the provisions of numerous New York city street railroad grants of far-reaching public importance. (*P. S. Comm.* v. *W. S. R. R. Co.,* 206 N. Y. 209; *People ex rel. W. S. R. R. Co.* v. *Barnard,* 110 N. Y. 548; *Willcox* v. *R. L. & R. R. Co.,* 202 N. Y. 515; 142 App. Div. 44; *Kittinger* v. *Buffalo Traction Co.,* 160 N. Y. 377; *People ex rel. City of New York* v. *N. Y.*

*Rys.*, 217 N. Y. 310; *People ex rel. City of Olean* v. *W. N. Y. & P. Traction Co.*, 214 N. Y. 526; *Gaedeke* v. *S. I. M. Ry. Co.*, 43 App. Div. 514.)

*Richard C. S. Drummond, Stewart F. Hancock, Boyd S. McDowell, Thomas H. Guy* and *August Merrill* for various cities of the state.

*Ledyard P. Hale* for Public Service Commission, respondent. Section 7 of chapter 359 of the Laws of 1915 should not be construed to exclude the jurisdiction of the public service commission under section 49 of the Public Service Commissions Law. (*Riggs* v. *Palmer*, 115 N. Y. 506; *People ex rel. U. & D. R. R. Co.* v. *Public Serv. Comm.*, 218 N. Y. 643; *Matter of Brooklyn, Q. C. & S. R. R. Co.*, 185 N. Y. 171; *Matter of N. Y., W. & B. R. Co.*, 193 N. Y. 72.) The agreement of 1890 is not controlling. (*People ex rel. N. Y. & N. S. T. Co.* v. *Pub. Serv. Com.*, 175 App. Div. 869.)

*Warnick J. Kernan* and *Daniel M. Beach* for New York State Railways, respondent. The power to regulate the rate of fare of a railroad corporation, whether by increasing or reducing the same, is at all times reserved to the state and, in its discretion, the power may be devolved by the legislature upon a proper body organized and formed for such purpose. (*People ex rel. Kimball* v. *B. & A. R. R. Co.*, 70 N. Y. 569; *Munn* v. *Illinois*, 94 U. S. 113; *Village of Saratoga* v. *Saratoga Gas, E. L. & P. Co.*, 191 N. Y. 123; *People* v. *Wilcox*, 194 N. Y. 383; *People ex rel. W. St. R. R. Co.* v. *P. S. Comm.*, 158 App. Div. 251; *People ex rel. Cohoes Ry. Co.* v. *P. S. Comm.*, 143 App. Div. 769; *People ex rel. N. Y., N. H. & H. R. R. Co.* v. *P. S. Comm.*, 159 App. Div. 531.) By section 49 of the Public Service Commissions Law, as amended by Laws of 1910, chapter 480, and by the Laws of 1910, chapter 481 (Railroad Law, § 181), the power of regulating the rate of fares of street

railroad corporations, embracing the right to increase as well as to reduce the same, has been devolved upon the public service commission. (*People ex rel. U. & D. R. R. Co. v. P. S. Comm.*, 171 App. Div. 607; 218 N. Y. 642; *People v. McClave*, 99 N. Y. 83; *State ex rel. M. S. R. R. Co. v. P. S. Comm.*, 168 S. W. Rep. 1156; *State ex rel. Rhodes v. P. S. Comm.*, 194 S. W. Rep. 287; *Arlington Board of Survey v. Bay State Ry. Co.*, 224 Mass. 263; *State ex rel. P. S. Comm. v. B. & O. R. R. Co.*, 76 W. Va. 399; *Milwaukee E. R. & L. Co. v. R. R. Comrs.*, 153 Wis. 593; *City of Woodburn v. P. S. Comm.*, 161 Pac. Rep. 391.) In its exercise of the police power — in which class of power is included the power to regulate the fares of railroad corporations — the legislature cannot be controlled either by the action of a previous legislature or by the provision of contracts between individuals or corporations. (*Buffalo East Side R. R. Co. v. Buffalo Street R. R. Co.*, 111 N. Y. 132; *People ex rel. Cohoes R. R. Co. v. P. S. Comm.*, 143 App. Div. 769; *City of Rochester v. Rochester Ry. Co.*, 182 N. Y. 99; *Milwaukee Elec. Ry. & Light Co. v. R. R. Comrs., etc.*, 238 U. S. 174; *Arlington Board of Survey v. Bay State Ry. Co.*, 224 Mass. 463; *Denver & S. P. Ry. Co. v. Englewood*, P. U. R., 1916, E. P. 134; *Home Tel. Co. v. Los Angeles*, 211 U. S. 265; *Puget Sound Traction Co. v. Reynolds*, 244 U. S. 574; *City of Woodburn v. P. S. Comm.*, 161 Pac. Rep. 391.) The consent of the municipal authorities required by article 3, section 18, of the Constitution of the state of New York as a condition to the construction and operation of a street surface railroad, is not legislative in character, and the sole and exclusive right of the legislature to regulate fares is in no wise affected or impaired thereby. (*Matter of Thirty-fourth St. R. R. Co.*, 102 N. Y. 343; *Mayor v. D. D., E. B. & B. R. R. Co.*, 133 N. Y. 104; *Adamson v. Nassau Electric R. R. Co.*, 89 Hun, 261; *Beekman v. Third Ave. R. R. Co.*,

13 App. Div. 279; 153 N. Y. 144; *People ex rel. N. Y. & N. S. T. Co.* v. *P. S. Comm.*, 175 App. Div. 869.) The reserved power of the legislature to regulate fares, acting through itself or by the public service commission, is not affected by the contract between the city of Rochester and the Rochester City and Brighton Railroad Company, of Rochester, N. Y., dated February 25, 1890, or by the Laws of 1908, chapter 475, referring to such contract. (*M. Ry. Co.* v. *Wisconsin R. R. Comm.*, 238 U. S. 174; *People* v. *Draper*, 15 N. Y. 532; *People* v. *Gaul*, 44 Barb. 98; *People* v. *Hyde*, 89 N. Y. 11; *Gillin* v. *Canary*, 19 Misc. Rep. 594; *M. E. Ry. & L. Co.* v. *R. R. Comm.*, 153 Wis. 593.) Neither is the reserved power of the legislature to regulate fares in the city of Rochester, acting through itself or by the public service commission, affected by the Laws of 1915, chapter 359. (*Braffett* v. *B., Q. C. & S. R. R. Co.*, 204 N. Y. 440; *Senior* v. *N. Y. C. Ry. Co.*, 111 App. Div. 39; 187 N. Y. 559; *Holmes* v. *Carley*, 31 N. Y. 289; *People* v. *Lacombe*, 99 N. Y. 43; *Schlegel* v. *A. B., etc., Co.*, 12 Abb. [N. C.] 280; *Matter of Courser*, 89 N. Y. 401; *Mayor, etc.,* v. *Buel*, 12 Daly, 494; *Walsh* v. *City of Buffalo*, 42 Hun, 438; *Bowen* v. *Lease*, 5 Hill, 221.)

*James L. Quackenbush, Charles E. Hotchkiss* and *Louis S. Carpenter* for New York Railways Company, intervening. Under existing statutes the public service commission has been given plenary power to exercise the legislative function of determining and fixing just and reasonable fares to be charged upon street surface railroads, and in the performance of this function the commission may authorize rates in excess of maximum rates of fare prescribed by other statutes. (*People ex rel. B. O. Co.* v. *P. S. Comm.*, 153 App. Div. 129; *People ex rel. U. & D. R. R. Co.* v. *P. S. Comm.*, 171 App. Div. 607; 218 N. Y. 643; *People ex rel. W. R. R. Co.* v. *P. S. Comm.*, 158 App. Div. 251; *People ex rel. D. & H. Co.* v.

*P. S. Comm.,* 140 App. Div. 839; *State ex rel. M. S. R. Co.* v. *P. S. Comm.,* 168 S. W. Rep. 1156; *State ex rel. Rhodes* v. *P.° S. Comm,* 194 S. W. Rep. 287; *Board of Survey* v. *B. S. Street Railway,* 224 Mass. 463; *State ex rel. P. S. Comm.* v. *B. & O. R. R. Co.,* 85 S. E. Rep. 714.) The public service commission is also empowered, under the statute, to fix a rate of fare to be charged upon a street surface railroad in excess of the rate stipulated in the consent of the local authorities authorizing construction and operation of such railroad, when after investigation the commission determines such increased fare to be just and reasonable. (*People ex rel. N. Y. & N. S. Traction Co.* v. *P. S. Comm.,* 175 App. Div. 869; *People ex rel. Simon* v. *Bradley,* 207 N. Y. 592; *Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185; *People ex rel. C. T. Co.* v. *Prendergast,* 202 N. Y. 188; *Matter of Thirty-fourth St. R. R. Co.,* 102 N. Y. 343; *Adamson* v. *N. E. R. R. Co.,* 89 Hun, 261; *City of Rochester* v. *Rochester Ry. Co.,* 182 N. Y. 99; 205 U. S. 236.)

*William L. Ransom* and *Harry M. Chamberlain* for Public Service Commission for the first district. The public service commission for the second district clearly has general jurisdiction of all street railroads within that district, including the railroad here in question, and general jurisdiction of the subject-matter here involved. (*People ex rel. N. Y. & N. S. T. Co.* v. *P. S. Comm.,* 175 App. Div. 869; *People ex rel. U. & D. R. R. Co.* v. *P. S. Comm.;* 171 App. Div. 607; 218 N. Y. 643; *People ex rel. W. S. R. R. Co.* v. *P. S. Comm.,* 158 App. Div. 251; 210 N. Y. 456.) As the public service commission has jurisdiction of the railroad and the subject-matter, the writ of prohibition will not lie. Any objection that in a given case the commission is without power to act along lines of particular relief because of circumstances peculiar to such case, should be urged before the commission and its determination thereon, when rendered,

reviewed, if necessary, by certiorari. (*People ex rel. Karr* v. *Seward*, 7 Wend. 518; *People ex rel. Bean* v. *Russell*, 49 Barb. 351; *People ex rel. Ballin* v. *Smith*, 184 N. Y. 96; *People ex rel. Patrick* v. *Fitzgerald*, 73 App. Div. 339; *People ex rel. Oakley* v. *Petty*, 32 Hun, 443.) The public service commissions have no power, in the absence of the city's consent, waiver or suitable modification of the franchise contract, to make effective a fare in excess of that by which the company agreed, at the city's option, to remain bound, as one of the terms and part of the consideration which led the city to grant its "consent" to the construction of a street railroad along city streets, under article 3, section 18, of the State Constitution; and the company should be left to re-apply to the city for a modification of the franchise contract on suitable terms, if the public service commission and the company feel that a higher rate of fare is necessary. (*Adamson* v. *N. El. R. R. Co.*, 89 Hun, 261; *People ex rel. F. Ry. Co.* v. *City of North Tonawanda*, 70 Misc. Rep. 91; *D. C. S. Ry. Co.* v. *Detroit Ry. Co.*, 171 U. S. 48; *Matter of Thirty-fourth St. R. R. Co.*, 102 N. Y. 343; *Matter of New York District R. R. Co.*, 107 N. Y. 42; *People ex rel. South Shore Traction Co.* v. *Willcox*, 133 App. Div. 561; *Allegheny City* v. *Railway Co.*, 159 Penn. St. 411; *People ex rel. N. Y. & N. S. Traction Co.* v. *P. S. Comm.*, 175 App. Div. 869; *P. S. Comm.* v. *W. S. Ry. Co.*, 206 N. Y. 209; *Willis* v. *City of Rochester*, 95 Misc. Rep. 686.) The special act annexing certain territory to the city of Rochester did not repeal the general law which reserves to the legislature and to the public service commission the power to regulate fares, and did not oust the commission for the second district from any jurisdiction or power it would otherwise have as to fares on street railroads in Rochester. (*Braffett* v. *B., Q. C. & S. R. R. Co.*, 204 N. Y. 240; *Hogan* v. *L. I. R. R. Co.* 206 N. Y. 440.)

POUND, J.   The facts upon which the application for a writ of prohibition is based are as follows: The New York State Railways presented a petition to the public service commission of the second district praying that it be permitted to raise to six cents its rate of fare on street surface railways in the city of Rochester and a number of other cities.  The city of Rochester filed objections to the jurisdiction of the public service commission to entertain such · application.  Its objections were based, *first*, on chapter 359, Laws of 1915, amending the charter of the city of Rochester and fixing a five-cent rate for one ride over the road of any corporation operating a street surface railroad in such city, and *secondly*, upon the like terms and conditions contained in the franchise of the street railroad company as a condition of the consent of the local authorities thereto. Briefs were filed with the commission on behalf of the city of Rochester in support of its claim that the public service commission was without jurisdiction to entertain said petition of the New York State Railways, and oral argument was also made before the commission by the corporation counsel of the city.

In November, 1917, the public service commission made a decision in one of the cases (*Matter of Petition of Huntington R. R. Co.*, 14 Official State Dept. Reports, 305; *Matter of Application of N. Y. & N. S. Traction Co.*, · 15 Official State Dept. Reports, 1, Jany. 10, 1918, *contra*) in which a petition for permission to increase rate of fare was presented to it, and held that the commission had the power to permit fares to be increased to an amount beyond five cents, notwithstanding the provision of section 181 of the Railroad Law, and also that it had power to permit fares to be increased beyond the rate fixed in a franchise granted by a municipality to a street railway company, and beyond the rate fixed in a contract existing between a municipality and a street railway com-

pany. After such decision the public service commission decided to hear the Rochester case on the merits. The public service commission has thus assumed jurisdiction of the matter of the application of the New York State Railways for permission to increase its rate of fare in the city of Rochester to six cents.

In order to present the case before the public service commission it would be necessary for the city to have a valuation made of the property of the New York State Railways, and it would cost the city of Rochester not less than twenty-five thousand dollars to present its evidence before the commission.

A writ of prohibition will not lie in anticipation of the action of the commission if the commission has *jurisdiction* of the subject-matter and the only question is that of *power to grant the particular relief prayed for.* It is an extraordinary remedy for unusual cases. (*People ex rel. Karr* v. *Seward,* 7 Wend. 518; *People ex rel. Bean* v. *Russell,* 49 Barb. 351; *People ex rel. Ballin* v. *Smith,* 184 N. Y. 96; *People ex rel. Patrick* v. *Fitzgerald,* 73 App. Div. 339; *People ex rel. Oakley* v. *Petty,* 32 Hun, 443.) In *Matter of Metz* v. *Maddox* (189 N. Y. 460) the sole question before this court was the constitutionality of chapter 538, Laws of 1907, providing for a recount of ballots cast in the McClellan-Hearst mayoralty contest of the year 1905, and the suitability of the procedure was not passed upon. The point that prohibition is not the proper remedy here is raised only by the intervening public service commission of the first district and the real parties are content to have this appeal disposed of on the merits.

We are, therefore, led to the inquiry: What is the jurisdiction of the commission over rate regulation? The New York State Railways operates in the second public service district, which comprises all counties except those in Greater New York. (Public Service

Commissions Law [Cons. Laws, chap. 48], § 3.) It is a street railroad corporation within the meaning of that term as used in the Public Service Commissions Law (Public Service Commissions Law, § 2, subd. 7). The term " common carrier" includes street railroad corporations. (Public Service Commissions Law, § 2, subd. 9.) Section 5 of the Public Service Commissions Law, after providing that the public service commission for the first district (Greater New York) shall have jurisdiction over common carriers operating within that district, provides as follows (Public Service Commissions Law, § 5, subd. 3):

" 3. All jurisdiction, supervision, powers and duties under this chapter not specifically granted to the public service commission of the first district shall be vested in, and be exercised by, the public service commission of the second district, including the regulation and control of all transportation of persons or property, and the instrumentalities connected with such transportation, on any railroad other than a street railroad from a point within either district to a point within the other district."

Section 181 of the Railroad Law (Cons. Laws, ch. 49), so far as material here, is as follows:

" No corporation constructing and operating a railroad under the provisions of this article, or of chapter two hundred and fifty-two of the laws of eighteen hundred and eighty-four, shall charge any passenger more than five cents for one continuous ride from any point on its road, or on any road, line or branch operated by it, or under its control, to any other point thereof, or any connecting branch thereof, within the limits of any incorporated city or village.

" * * * *  *The legislature expressly reserves the right to regulate and reduce the rate of fare on any railroad constructed and operated wholly or in part under such chapter or under the provisions of this article; and the*

*public service commission shall possess the same power, to be exercised as prescribed in the public service commissions law.*"

Subdivision 1 of section 49 of the Public Service Commissions Law is in part as follows:

" § 49. Rates and service to be fixed by the commission. 1. Whenever either commission shall be of opinion, after a hearing had upon its own motion or upon a complaint, that the rates, fares or charges demanded, exacted, charged or collected by any common carrier, railroad corporation or street railroad corporation subject to its jurisdiction for the transportation of persons or property within the state, or that the regulations or practices of such common carrier, railroad corporation or street railroad corporation affecting such rates are unjust, unreasonable, unjustly discriminatory or unduly preferential, or in any wise in violation of any provision of law, *or that the maximum rates, fares or charges, chargeable by any such common carrier, railroad or street railroad corporation are insufficient to yield reasonable compensation for the service rendered, and are unjust and unreasonable, the commission shall with due regard among other things to a reasonable average return upon the value of the property actually used in the public service and to the necessity of making reservation out of income for surplus and contingencies,* determine the just and reasonable rates, fares and charges to be thereafter observed and in force as the maximum to be charged for the service to be performed, notwithstanding that a higher rate, fare or charge has been heretofore authorized by statute, and shall fix the same by order to be served upon all common carriers, railroad corporations or street railroad corporations by whom such rates, fares and charges are thereafter to be observed."

It is clear that the New York State Railways, which operates in the city of Rochester and other cities of the .

state of New York outside the first district, is within
the jurisdiction of the public service commission for the
second district, and that such commission possesses some
general jurisdiction to deal with the subject of regulating
the rate of fare to be charged by the street railroads in
the second district,

We must next consider whether this jurisdiction is
limited,

1. By the charter amendment (L. 1915, ch. 359, § 7),
fixing a five-cent fare in the city of Rochester, which
reads as follows:

" A corporation operating a street surface railroad
must not charge any passenger more than five cents
for one continuous ride from any point on its road to
any other point thereon, within the limits of the city
of Rochester.  In case two corporations operate separate
street surface railroads which connect or intersect in
the city of Rochester, such corporations must not charge
any passenger more than five cents for one continuous
ride from any point on one road to any point on the
other road, within the limits of the city of Rochester.
In either of the above cases a transfer must be issued
to a passenger when necessary for such passenger to
transfer from one car to another, in order to complete
one continuous ride.  If two corporations affected by
the provisions hereof cannot agree as to the method of
division between them of fares collected, such method of
division must be settled by the public service commis-
sion of the second district of the state of New York.
The word ' road ' as used in this section includes all street
surface railroads, lines and branches operated by one
corporation, those leased by it and those under its
control."

The policy of the state is said to be that the public
service commission should deal with the regulation of

rates of fare charged by railroad corporations without limitation or restraint, and with the power to increase as well as decrease such rates. (*People ex rel. N. Y. & N. S. Traction Co.* v. *Public Service Com.*, 175 App. Div. 869; *People ex rel. Ulster & D. R. R. Co.* v. *Public Service Commission*, 171 App. Div. 607, 611; affd., 218 N. Y. 643.)

The case last cited had to do exclusively with statutory mileage book rates and it has not been held by this court that the commission has power to raise ordinary rates of fare above the rate fixed by statute. The point was expressly saved for future consideration. " We are now simply dealing with the question of reduced rates to which those words (' notwithstanding that a higher rate, fare or charge had been heretofore authorized by statute ') clearly do not apply," said COCHRANE, J., in the *U. & D. Case* (*supra*) and his opinion was adopted by this court. But he also said that maximum statutory charges were to be considered and raised if insufficient, and the only reasonable construction of section 49, subdivision 1, is that when the maximum charges fixed by statute do not yield reasonable compensation for the service rendered the commission may raise the rate. The words " notwithstanding that a *higher* rate, charge or fare has heretofore been authorized by statute " are not entirely apt, but the section, read as a whole, is susceptible of no other natural interpretation than that the legislature has, for greater certainty, expressly included in its general delegation of powers, the power of the commission to reduce a maximum rate *fixed by the legislature*. The purpose of the legislation was to provide for the regulation of statutory fares by a board which may be expected to pass equitably upon conflicting claims with its single purpose the common good, even where a maximum rate had been fixed by the legislature.

The case of *Willis* v. *City of Rochester* (219 N. Y.

427) merely upheld the charter amendment as a constitutional exercise of the legislative power to fix rates. Rates so fixed by special statute are still subject to regulation by the public service commission. The jurisdiction of that body over such rates is not to be reduced by implication. The legislature merely fixed the rate *pro tempore.*

We have still to consider whether jurisdiction is limited,

2. By the fact that the consent of the local authorities was given on condition as to rates of fare.

The Constitution, article III, section 18, as it was amended in the year 1875, provides:

" But no law shall authorize the construction or operation of a street railroad except upon the condition that the consent of the owners of one-half in value of the property bounded on, *and the consent also of the local authorities having the control of, that portion of a street or highway upon which it is proposed to construct or operate such railroad be first obtained,* or in case the consent of such property owners cannot be obtained, the Appellate Division of the Supreme Court, in the department in which it is proposed to be constructed, may, upon application, appoint three commissioners who shall determine, after a hearing of all parties interested, whether such railroad ought to be constructed or operated, and their determination, confirmed by the court, may be taken in lieu of the consent of the property owners."

The power of the local authorities to impose as a condition to giving consent to the construction and operation of a street railroad that a stipulated rate of fare should be charged has been repeatedly upheld. (*People ex rel. West Side St. R. Co.* v. *Barnard,* 110 N. Y. 548; *Kittinger* v. *Buffalo Traction Co.,* 160 N. Y. 377, 391, 392; *Public Service Commission* v. *Westchester St. R. Co.,* 206 N. Y. 209; *People ex rel. Frontier Elec. Ry. Co.* v. *City of North Tonawanda,* 70 Misc. Rep. 91; *Allegheny*

*City* v. *Millville, A. & S. S. Ry. Co.*, 159 Pa. St. 411.) But these cases dealt with the question of local power over the corporation and not with the question of general legislative power over the municipality. The question presented is this: The consent of the local authorities being obtained, what jurisdiction has the legislature conferred upon the public service commission to regulate rates by increasing the rate agreed upon without such consent? Again it is urged that its jurisdiction is plenary; that "a municipal corporation is simply a political subdivision of the State, and exists by virtue of the exercise of the power of the State through its legislative department. * * * The city is the creature of the State" (*City of Worcester* v. *Worcester Con. St. Ry. Co.*, 196 U. S. 539, 548); that rate regulation is a matter of the police power of the state and, therefore, contracts may be affected by its exercise without impairing their obligation (*Louisville & N. R. R. Co.* v. *Mottley*, 219 U. S. 467, 485; *Texas & N. O. R. R. Co.* v. *Miller*, 221 U. S. 408, 414; *Buffalo E. S. R. R. Co.* v. *Buffalo Street R. R. Co.*, 111 N. Y. 132); that the power to regulate rates has not been irrevocably surrendered to the local authorities by the constitutional requirement that the consent of such authorities is requisite; that no immunity from the exercise of governmental power has been transferred to the municipalities, save only that their naked consent is requisite; that if conditions may validly be imposed upon such consent by the localities in the beginning they are subject to alteration or repeal at the legislative will; that as the state cannot be fully sovereign without full legislative power, such power is not deemed to be abridged. (*City of Rochester* v. *Rochester Ry. Co.*, 182 N. Y. 99; affd., 205 U. S. 236; *Portland Ry., L. & P. Co.* v. *City of Portland*, 201 Fed. Rep. 119, 125.) It has been held that the legislature may, by virtue of its general power over municipalities, regulate the mode and manner in

which the consent of the local authorities to the construction and operation of street railroads shall be given, and may regulate and limit by statute the conditions upon which it may be given. (*Matter of Thirty-fourth St. R. R. Co.*, 102 N. Y. 343; *Beekman* v. *Third Ave. R. R. Co.*, 153 N. Y. 144, 152; *People ex rel. S. S. Traction Co.* v. *Willcox*, 196 N. Y. 212.) Regulations are so made in certain cases by the Railroad Law, section 173, but that section expressly provides that nothing therein contained shall be construed as modifying or affecting the terms of the contract between the city of Rochester and the street railroad, and it looks to the future and does not attempt to regulate consents already granted. The Constitution does not expressly provide that the municipality may irrevocably establish rates for the entire period of a franchise, and it has been held invariably and in a legion of cases that such power 'to establish rates is not essential to the consent of local authorities and will not be implied and that the legislature is at all times supreme in the matter. (*Home Telephone & Tel. Co.* v. *City of Los Angeles*, 211 U. S. 265; *Arlington Board of Survey* v. *Bay State St. Ry. Co.*, 224 Mass. 463; *State ex rel. Webster* v. *Superior Court*, 67 Wash. 37; L. R. A. 1915, C 287; *State ex rel. M. S. R. R. Co.* v. *P. S. C.*, 168 S. W. Rep. 1156; *City of Manitowoc* v. *M. & N. Traction Co.*, 145 Wis. 13; *City of Dawson* v. *Dawson Tele. Co.*, 137 Ga. 62; *City of Woodburn* v. *Pub. Service Commission*, 82 Ore. 114; L. R. A. 1917, C 98; *Collingswood Sewerage Co.* v. *Borough of Collingswood*, 91 N. J. L. 20.) In all such cases, the question was one of unrestricted legislative power, policy and discretion over a city or town where the local authorities were held to be mere instrumentalities through which the state exercised its sovereign power. The paramount power of the legislature over the subject of fares was upheld in the absence of a constitutional limitation. But our Con-

stitution, by requiring the consent of the local authorities, recognizes that our municipalities are *pro tanto* independent of legislative control, exercising some fragment of power, otherwise legislative in character, which has been thus irrevocably transferred by the fundamental law from the legislature to the locality. The grant by the municipality of authority to use the streets is not a mere privilege or gratuity. Once accepted, it becomes a contract which neither the state nor its agencies can impair. (*People* v. *O'Brien,* 111 N. Y. 1.) And it is urged by the appellant that the franchise and the conditions upon which the consent of the local authorities are obtained are inseparable; that the very right of the railroad to operate depends upon its compliance with the obligation to keep such conditions (*Matter of N. Y. E. Lines Co.* v. *Empire City Subway Co.,* 201 N. Y. 321, 329; affd., 235 U. S. 179); that it would be a vain thing if the consent were placed under the protection of the Constitution, and the conditions which induced such consent were immediately subject to extinguishment by the legislature for that would mock the very purpose of the constitutional provision and permit almost any interference by the legislature; that the local authorities in this matter are supreme over the public service commission by virtue of the Constitution; that the obligation of a street surface railroad to carry passengers for an agreed fare may in a constitutional sense be neither a contract nor private property, but it is imposed by virtue of a delegated power, delegated by the people — not by the legislature — to the local authorities, and is thus beyond legislative recall; that when any right is expressly protected by the Constitution the police power may not be exercised to impair its validity (*People* v. *Gillson,* 109 N. Y. 389, 400); and that the public service commission, therefore, has no jurisdiction over the subject-matter of rate regulations in the city of Rochester because the legislature

has no power to alter the rates fixed by consent of the company and the local authorities.

It is, however, unnecessary and, therefore, improper to decide at this time what the limits of legislative power are in this connection. The delegation of legislative power to commissions and other administrative officers and boards need not be assumed if the general words from which such delegation may be inferred are not reasonably so construed.

In the absence of clear and definite language conferring without ambiguity jurisdiction upon the public service commission to increase rates of fare agreed upon by the street railroad and the local authorities we should not unnecessarily hold that the legislature has intended to delegate any of its powers in the matter, whatever its powers may be. The Public Service Commissions Law (§ 26, § 49, subd. 1) and the Railroad Law (§ 181) deal with maximum rates of fare established by statute but make no reference in terms to rates established by agreement with local authorities.

In regulating rates three courses were open to the legislature:

1. To prescribe rates itself. 2. To delegate the power to the commission. 3. To leave the matter to agreement between the street railroad company and the local authorities. It has constitutionally conferred on the public service commission certain functions (*Matter of Trustees of Village of Saratoga Springs* v. *Saratoga Gas, E. L. & P. Co.*, 191 N. Y. 123), which plainly include the power to regulate rates fixed by statute, and while it may be said that it has undertaken to delegate to the public service commission " *the same power* " *that it has* to regulate rates of fare (Railroad Law, § 181) it is impossible to find a word in the statutes which discloses the legislative intent to deal with the matter of rates fixed by agreement with local authorities. As it has often been held

in connections other than that of legislative power over them that such agreements are valid, it may well be inferred that the legislature excluded them from consideration by failure to mention them and that it has made no attempt to turn them over to the public service commission for revision. " Statutes should be read according to the natural and most obvious import of the language, without resorting to artificial or forced constructions, for the purpose of either limiting or extending their operation." (*Matter of N. Y. & Brooklyn Bridge,* 72 N. Y. 527, 529; *Heerwagen* v. *Crosstown St. Ry. Co. of Buffalo,* 179 N. Y. 99.) " A thing which is within the letter of the statute is not within the statute, unless it be within the intention of the makers." (*Riggs* v. *Palmer,* 115 N. Y. 506, 509; *McDowall* v. *Sheehan,* 129 N. Y. 200, 206.) The authority of the commission to regulate rates in such cases and thus to extinguish an undoubted power of the local authorities should fairly appear before it is assumed to exist.

It follows that the public service commission is without jurisdiction; that prohibition is the proper remedy; that the order appealed from should be reversed and that an absolute writ of prohibition be awarded to relators, with costs to appellants in all courts.

CRANE, J. (concurring): I concur. I am of the opinion that the reserve police power of the legislature has not been contracted away. I concur in the above opinion in so far as it states that the legislature has not in this instance given to the public service commission the power of regulation.

CUDDEBACK, CARDOZO and ANDREWS, JJ., concur with POUND, J., and CRANE, J., concurs in memorandum; HISCOCK, Ch. J., and COLLIN, J., dissent.

Order reversed, etc.