PEOPLE ex rel. CITY OF NEW YORK, Relator, *v.* LEWIS NIXON, Constituting the Public Service Commission of the State of New York for the First District, and WILLIAM R. BEGG and ARTHUR C. HUME, as Receivers of the Manhattan and Queens Traction Corporation, Defendants.

(Supreme Court, New York Special Term, October, 1919.)

Writ of prohibition — when application for an alternative writ granted — street railways — receivers — corporations — when public service commission has not jurisdiction to increase rate of fare on street surface railroads.

    An application by the city of New York for an alternative writ of prohibition directing the public service commission, first district, and the receivers of the Manhattan and Queens Traction Corporation commanding it and them to desist from any further proceedings in the matter of the application of said receivers for permission to increase the rate of fare upon the street surface railroads owned by said corporation, will be granted in view of the decision in the *Quinby Case* (223 N. Y. 244), reaffirmed in later decisions of the Court of Appeals, holding that the public service commission, in a case like the present one, has not jurisdiction to grant permission to increase the rate of fare.

APPLICATION by the city of New York for the issuance of an alternative writ of prohibition.

William P. Burr, corporation counsel, for relator City of New York.

Terence Farley, for defendant Public Service Commission for the First District.

Watson B. Robinson, of counsel for William R. Begg and Arthur C. Hume as receivers of Manhattan and Queens Traction Corporation.

Supreme Court, October, 1919.        [Vol. 109.

The following requested permission and were allowed to submit briefs:

Hornblower, Miller, Garrison & Potter (Carl M. Owen, of counsel), for Lindley M. Garrison, receiver of the Brooklyn Rapid Transit Company.

Arthur G. Peacock, for the New York and Queens County Railroad Company.

James L. Quackenbush (Louis S. Carpenter, of counsel), for Interborough Rapid Transit Company.

Winthrop & Stimson (Bronson Winthrop, of counsel), for Job E. Hedges, receiver of the New York Railways Company.

Leventritt, Cook & Nathan (Alfred A. Cook, of counsel), for James R. Sheffield, trustee of the Interborough Consolidated Corporation.

Finch, J.   This is an application by the city of New York for the issuance of an alternative writ of prohibition, directed to Lewis Nixon, constituting the public service commission of the state of New York for the first district, and William R. Begg and Arthur C. Hume, as receivers of the Manhattan and Queens Traction Corporation, commanding said commission and said receivers to desist from any further proceedings in the matter of the application of such receivers for permission to increase the rate of fare charged for transportation upon the street surface railroad owned by said corporation.

The city bases its contention upon the terms of a written contract made between the city of New York and the South Shore Traction Company, the predeces-

sor in interest of the Manhattan and Queens Traction
Corporation. That portion of said contract material
to this controversy is, in brief, that the city gave to
the railroad all rights enumerated in the contract upon
the condition among others that the rate of fare for one
passenger upon said railroad was not to exceed five
cents, and in case of any violation of this condition,
the contract might be forfeited at the option of the
city and the railroad become the property of the city,
after a hearing shall have been afforded to the railroad
to show cause why the contract should not be for-
feited. The city then alleges that the public service
commission which was the predecessor of this com-
missioner, and Lewis Nixon, as commissioner, had pub-
licly recognized that the public service commission did
not have jurisdiction to increase the fare. That there-
after said Lewis Nixon, constituting the public service
commission of the state of New York for the first dis-
trict, had increased the fare in the case of the New
York and North Shore Traction Company; and that
almost immediately thereafter a similar application
was made to raise the fare on the Manhattan and
Queens Company's line. The prayer of this latter peti-
tion reads: " Wherefore, your petitioners respect-
fully pray that they be permitted by an order of the
public service commissioner to put in force two fare
zones, as follows: A five cent (5¢) fare zone extend-
ing from the Manhattan Terminal to Grand Street,
Elmhurst, and an eight cent (8¢) fare zone extending
from Grand Street, Elmhurst, to the terminus of your
petitioners' line in Jamaica, and for such other order
or relief as may be just in the premises." Said public
service commissioner thereupon issued an order noti-
fying the company and the city of New York of a time
and place when he would hold a hearing on this appli-
cation, and the title of this order for the proposed

Supreme Court, October, 1919.        [Vol. 109.

hearing describes it as follows: "In the Matter of the application of * * * * Receivers of the Manhattan & Queens Traction Corporation for an order under Section 49 of the Public Service Commissions Law increasing the rate of fare." On September 3, 1919, Commissioner Nixon wrote a letter to the mayor of the city of New York in which he said: "There is enclosed herewith an application of the Receivers of the Manhattan & Queens Traction Company for an order under Section 49 of the Public Service Commissions Law to increase the rate of fare.

"This is sent for the information of the Board of Estimate and Apportionment.

"The usual public hearing will be ordered as a basis for action."

That thereafter the city of New York obtained the present order to show cause as to why an alternative writ of prohibition should not issue, prohibiting the public service commission from granting permission for an increase of fare, on the ground that said commission was without jurisdiction to grant said increase.

Respondent commissioner denies the allegation in relator's petition that he threatens and intends to abrogate the contract between the city of New York and the railroad fixing a five cent rate of fare. He alleges: "I did not intend to do anything until I had ascertained the true facts. When ascertained they may not justify me in doing anything." He fails, however, to specifically deny the all-important allegations of the petition that he does claim jurisdiction to increase the fare. This is important in view of the conceded fact that he assumed jurisdiction and granted an increase of fare in the case of the application of the New York and North Shore Traction Company. He seeks to justify this action by alleging that said company operates in the first and second districts, and that

in permitting zone rates to be established by said corporation " all that I did was practically to follow the ruling of the Public Service Commission of the Second District." He also alleges that he did intend if the facts warranted it to make a report to the board of estimate and apportionment and recommend that it grant that relief to which in its judgment the receivers would be entitled; and that as it is his duty to make annual reports to the legislature, if the facts developed on the proposed hearing justified any report or recommendation by him to that body, he intended to make it; and that it is his duty to examine and keep informed as to the general conditions of the railroads.

So far as these allegations concern activities other than an increase of fare, it is to be noted that the commissioner in his letter to the mayor mentioned none of them and simply stated that he had received " an application * * * for an order * * * to increase the rate of fare; " and that " the usual public hearing will be ordered *as a basis for action.*" The commissioner further states: " I will welcome an adjudication as to my powers provided a proper legal proceeding be instituted." He then goes on to contend that a proper proceeding would be in effect to have a hearing and then review his determination by a writ of certiorari. The expense and delay incident to such a hearing are obvious, and in addition, if the decision of the commissioner should be in favor of an increase of fare, the nature of this controversy is such that it would be extremely difficult, if not almost impossible, to obtain a stay pending appeal, and if it should be finally determined that the commissioner had no jurisdiction to increase the fare those who had paid such increased fare might find it impracticable to recover the same. In view of the fact that the railroad applicant is seeking to change the present status, coupled

with the fact that the Court of Appeals has already unequivocally decided that the public service commission in a case such as the case at bar has not jurisdiction to grant permission to increase the fare (*Matter of Quinby* v. *Public Service Comm.,* 223 N. Y. 244), which decision has been expressly affirmed in two later decisions of the same court (*People ex rel, Village of South Glens Falls* v. *Public Service Commission,* 225 N. Y. 216, and *Matter of International Railway Co.* v. *Public Service Commission,* 226 id. 474), it would seem that the procedure adopted for testing the substantial question of law involved (without the expense and delay and possible injustice already noted, incident to a hearing and appeal) should be the proper method. In addition, it would seem to be a sufficient answer that the alternative writ of prohibition granted should only prevent action permitting an increase of the rate of fare, and should not prevent such other action as the commissioner has jurisdiction to perform.

It is also contended by counsel for the receiver of the New York Railways Company and of the trustee of the estate of Interborough Consolidated corporation that the procedure here sought is improper, for the reason that the city might later give its consent to a modification of the contract, and that if such consent did take place then before the rate of fare could be increased the public service commissioner would also have to grant permission for the increase, and that since both the consent of the city and the public service commissioner would in that event have to be obtained, the permission of the public service commissioner might take place prior to the consent of the city, citing *Matter of Thirty-fourth St. R. R. Co.,* 102 N. Y. 343. Leaving out of consideration the fact that the city is here strenuously objecting to any modification of the contract as to the rate of fare, a complete

answer is that it has already been decided that where there exists a contract such as exists in the case at bar the legislature has not delegated to the public service commission jurisdiction to increase rates. Thus to hold that the public service commissioner where a contract exists as in the case at bar might have such jurisdiction under one set of facts but not under another would apparently be directly contrary to such decision. *Matter of Quinby* v. *Public Service Comm., supra.* Upon this record there are set forth sufficient facts, together with the reasonable and fair inferences therefrom, to hold that the proper method of procedure has been adopted.

As already noted, the Court of Appeals has passed upon and directly held that in a case such as that at bar the public service commission has no jurisdiction to grant permission for an increase of fare. *Matter of Quinby* v. *Public Service Comm., supra.* The city of New York had full power to require as a condition of its consent to the operation, and looking to the future operation of said railroad, that passengers should be carried for a single fare of five cents, and had power to provide expressly that a breach of said condition should operate by way of defeasance of the franchise so that the grant might be terminated. In *People ex rel. West Side St. R. Co.* v. *Barnard,* 110 N. Y. 557, Judge Earl said: " It has been said that the action of the common council was illegal and void because it required the purchaser of the franchise to carry passengers from Seneca street through the route specified in the grant for a single fare of five cents for one continuous passage. The resolution undoubtedly required the railway company taking the grant to carry passengers to and from points beyond one of its termini. This was a condition which it could impose. It might be difficult for the company taking the grant

to perform it; but it was not impossible to perform it because, under the statutes, there was a way by which the relator could obtain the right to run upon the tracks of the East Side Street Railway Company, which owned the road between Seneca street and one terminus of the route granted. If it should turn out that it could not comply with the terms of the grant, in the respect mentioned, the result would simply be that it would be exposed to the forfeiture of its franchises and rights.''

The contract dated October 29, 1912, between the city of New York and the railroad expressly conditions the grant upon a single fare of five cents, and expressly provides that a breach of such condition shall operate by way of defeasance of the franchise, so that the grant may be terminated. In seeking to nullify the force of these express provisions the respondent commissioner cites section 6 of the contract dated October 29, 1912, between the city and the railroad which provides as follows: '' This grant is also upon the further and express condition that the provisions of the Railroad Law pertaining thereto shall be strictly complied with by the company,'' and it is argued from this requirement that since the Railroad Law permits an increase of fare by the legislature and by the public service commission, therefore the city expressly agreed in the contract that said fare might be increased by the public service commission. In the first place, it is to be noted that the language of section 6 puts the obligation alone upon the railroad company. In addition there is no room for such implied construction in the face of the carefully expressed condition for a five-cent fare and the provision for a forfeiture of the whole contract in the event of a breach of such condition.

Respondents contend that the decision in *Matter of Quinby* v. *Public Service Comm., supra,* is not

applicable because of later decisions of the same court, citing *People ex rel. Village of South Glens Falls* v. *Public Service Comm.,* 225 N. Y. 216, and *Matter of International Railroad Co.* v. *Public Service Comm.,* 226 id. 474. While the two later decisions have emphasized some of the reasons, rather than others, given for the decision in *Matter of Quinby,* yet in the very act of so doing the court has expressly reaffirmed the decision itself. In *Matter of Quinby* it was held that whatever the power of the legislature might be (and the question was expressly left open) the legislature had not intended to delegate its powers, if any, to increase fares to the public service commission in a case where the provisions of the contract involved a right of forfeiture for breach of a condition subsequent as does the contract between the city of New York and the railroad. It was not a constitutional question, as that term is usually understood, which the court was there dealing with, but a question solely of statutory construction, and the decision was placed clearly upon the lack of statutory authority from the legislature to the public service commission. In *People ex rel. Village of South Glens Falls* v. *Public Service Comm.,* the court there was dealing with the provision of a contract between a village and a gas company where such provision constituted an independent covenant and where such covenant though a part of the consideration for the franchise was not made a condition subsequent of the grant. The court called attention to the distinction between that case and its previous decision and expressly reaffirmed the decision in *Matter of Quinby.* In *Matter of International Ry. Co.* v. *Public Service Comm.,* the distinction between *Matter of Quinby* and the two later cases is. again pointed out by the unanimous court, and the decision in *Matter of Quinby* expressly again reaffirmed, the court say-

ing: " It is one thing to annul an independent covenant, which, though part of the consideration for the grant, does not condition the grant itself. It is another thing to annul a condition which operates, by way of defeasance of the franchise, to terminate the grant. Our decision in the *Quinby* case must be read in the light of that distinction." And again, " We found a limitation of the rate of carriage lawfully imposed by a municipality as one of the conditions of its consent (Railroad Law, sec. 173). We found nothing in the statute expressly authorizing its annulment. We saw that the effect of the annulment would be to abrogate a defeasance, and impose upon the streets of the city a burden in perpetuity. In default of ' clear and definite language,' we followed the settled rule that ' a statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score.' (*United States* v. *Jin Puey Moy*, 241 U. S. 394, 401; *Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259, 267)."

It is also to be noted in the case at bar that after the decision in *Matter of Quinby* was handed down, which was in April, 1918, the legislature in the session of 1919 enacted legislation which reorganized and converted the public service commission of the first district from a tribunal consisting of five members to a single-headed commission, and then provided as follows:

" The Public Service Commission of the first district, as constituted in pursuance of the public service commissions law as amended by this act, shall be deemed and held to constitute a continuation of the public service commission of the first district as now constituted and not as a new commission, for the purpose of succession to all the rights, powers, duties and obligations of the public service commission of the first dis-

trict as now constituted, except as provided by this act, with the same force and effect as if such modifications were made without any change in the membership of the present commission; and the present commission as now constituted and the commission to be constituted in pursuance of the public service commissions law, as amended by this act, shall be deemed and held to be one continuing commission, notwithstanding the change in the membership thereof.''

It would seem that in so doing the legislature thereby placed its approval upon the judicial construction placed by the Court of Appeals in *Matter of Quinby* upon the Public Service Commissions Law, namely, that the legislature had not intended to confer upon the public service commission the right to give permission to grant an increase of fare in a case such as that at bar. As was said in *People ex rel. Outwater* v. *Green,* 56 N. Y. 466, 475: '' The re-enactment of the same provision should be deemed an adoption by the legislature of the construction put upon those acts.'' When it is recalled that there was pending before that same legislature a bill having for its object an increase in fare, the force of the application of the principle is the more plainly appreciated.

It follows that the application for an alternative writ of prohibition should be granted to the extent herein indicated.

Ordered accordingly.