In the Matter of ROBERT J. CARY et al., Appellants, against THE COUNCIL OF THE CITY OF BINGHAMTON, Respondents.*

Third Department, November 11, 1942.

---

* Revg. 178 Misc. Rep. 265.

*Herman F. Nehlsen* for appellants.

*Hugh J. Heffern, Corporation Counsel* (*Thomas J. Ryan* of counsel), for respondents.

CRAPSER, J. The petition prayed for an order directing that the respondents and each of them, as members of the Council of the City of Binghamton, desist and refrain from taking any action upon ordinances introduced in the Council of the City of Binghamton removing Robert J. Cary and William Allen Page, respectively, as Commissioners of the Municipal Civil Service Commission of the City of Binghamton.

The respondents, Council of the City of Binghamton, served an answer setting up as a separate and distinct and complete defense to the petition that the petitioners did not set forth facts sufficient to constitute a cause of action, that the proceedings were premature and that legal remedies were available to the petitioners.

Robert J. Cary, one of the petitioners, has been a qualified and acting Civil Service Commissioner of the City of Binghamton since December 15, 1941, having been appointed by the Mayor pursuant to the provisions of section 11 of chapter 7 of the Consolidated Laws entitled "Civil Service Law," and sections 102 and 115 of chapter 444 of the Laws of 1914, entitled "The Optional City Government Law." ■

William Allen Page, the other petitioner, has been a duly qualified acting Municipal Civil Service Commissioner of the City of Binghamton since June 30, 1940, in accordance with the foregoing law.

The City of Binghamton adopted a simplified form of government defined as Plan F according to the City Government Law on April 20, 1937.

On the 16th of March, 1942, Fancher M. Hopkins, Mayor of the City of Binghamton, requested the respondents to take such action as they might deem it advisable under section 47 of the Optional City Government Law as to the removal of the

petitioners-appellants from their positions in the Civil Service Commission, which action resulted in the introduction of the ordinance to remove the appellants.

The ordinance introduced was as follows:

" WHEREAS, Fancher M. Hopkins, Mayor of the City of Binghamton, New York, by communication under date of March 16th, 1942, and duly filed in the Office of the City Clerk of the City of Binghamton, New York, sets forth certain specifications relating to the official actions of Robert J. Cary as a member of the Municipal Civil Service Commission of the City of Binghamton, New York, warranting legislative action of the Council of the City of Binghamton, New York, now therefore,

"The Council of the City of Binghamton duly convened in regular session does hereby ordain as follows:

" SECTION I. That pursuant to authority vested in the Council of the City of Binghamton, New York, by Section 47 of the Optional City Government Law and being Section 547 of the Unconsolidated Laws of the State of New York, Robert J. Cary, a Commissioner of the Municipal Civil Service Commission of the City of Binghamton, New York, be and he hereby is removed from such office for the following reasons, viz:

" FIRST: That the transfer of Catherine Morey from the office of Assistant Secretary to the Municipal Civil Service Commissioner to Stenographer-Clerk in the Bureau of Health, Department of Public Safety, and of Marie L. Cushing from the position of Stenographer-Clerk in the Bureau of Health, Department of Public Safety, to Assistant Secretary of the Municipal Civil Service Commission was improper, invalid and in violation of the provisions of the Civil Service Law of the State of New York and the rules of the Municipal Civil Service Commission of the City of Binghamton, New York, and all of which was contrary to the proper administration of the Civil Service Law of the State of New York and the rules enacted thereunder and detrimental to the government of the City of Binghamton, New York.

" SECOND: That the certification of Edward J. Buchinsky from the list of delinquent tax collector for the position of Detective-Clerk was improper as the list of delinquent tax collectors from which he was certified was not an appropriate list from which certification to the position of Detective-Clerk could be made, and which certification the said Robert J. Cary has failed, refused and neglected to cancel and annul, and all of which was contrary to the proper administration of the Civil Service Law of the State of New York and the rules enacted

thereunder and detrimental to the Government of the City of Binghamton, New York.

"THIRD: That Robert J. Cary participated in placing Joseph C. Hamlin in the position of Skilled Laborer, competitive class, in violation of law and all of which was contrary to the proper administration of the Civil Service Law of the State of New York and the rules enacted thereunder and detrimental to the government of the City of Binghamton, New York.

"FOURTH: That the said Robert J. Cary, on or about July 22, 1941, then Commissioner of Public Works, approved a verified claim executed by William Allen Page, ' For services in cleaning, sorting, preparing duplicate copies and refiling soiled official documents damaged at time of fire in Mayor's Office on 3/14/41 (as covered by insurance adjustment) March 15 to July 15, 1941, agreed price $350.00,' in violation of the statutes in said case made and provided and which was detrimental to the Government of the City of Binghamton, New York.

"FIFTH: That the general conduct, attitude and demeanor of the said Robert J. Cary is not conducive to the proper administration of the Civil Service Law and is detrimental to the Government of the City of Binghamton, New York.

"SECTION II. That this ordinance shall take effect immediately."

A similar ordinance was proposed for the removal of William Allen Page.

Under Plan A of the Optional City Government Law the legislative, executive and administrative powers are vested in the council. (Optional City Government Law, § 72.) Under this plan of government the council is possessed and has the full power and performs all the duties imposed upon the Mayor. (Optional City Government Law, § 74.)

Under this plan of government, although there is a Mayor, his duties are merely to attend the meetings of the council and at meetings he presides and is possessed of the same power as a councilman to vote upon all matters coming before the council but has no veto power. (Optional City Government Law, § 77.)

Under Plan B of the Optional City Government Law, the council has similar legislative executive and administrative powers (Optional City Government Law, § 80), and the Mayor only has the power of a councilman without veto power (Optional City Government Law, § 84.)

Under Plan C of the Optional City Government Law, the administrative and executive powers of the city are vested in the City-Manager who is appointed by the council and holds

office during their pleasure. (Optional City Government Law, § 90.) Under this plan the Mayor merely presides at the meetings of the Council, is the official head of the city for the service of civil process and for ceremonial purposes. He has no power of veto and has the same power as a councilman to vote upon matters coming before the council. (Optional City Government Law, § 89.)

Under Plans D, E, and F, the Mayor is the chief executive officer of the city and the council has only legislative powers, the only difference between the plans being the method and number of councilmen elected.

Under Plan F of the Optional City Government Law the council of the City of Binghamton is vested solely with legislative power. (Optional City Government Law, § 103.)

Section 102 of the Optional City Government Law provides: " There shall be a mayor elected at large, who shall be the chief executive officer of the city; he shall maintain peace and good order, and enforce the laws and ordinances therein; he shall see that the duties of the various city officers are faithfully performed. He may appoint all officers of the city who are required by law or by the ordinances to be appointed."

Section 105 of the Optional City Government Law provides as follows: "The executive and administrative powers of the city shall be vested in the mayor and such other officers as shall be elected or appointed pursuant to this act."

Subdivision 6 of section 11 of the Civil Service Law (Cons. Laws, ch. 7) provides as follows: " The mayor or other duly authorized appointing authority may at any time remove any municipal civil service commissioner for cause and after a public hearing, and, except as hereinafter provided, appoint his successor as herein provided for the unexpired term. Said state commission may also, by unanimous vote of the three commissioners, with the written approval of the governor, remove any municipal civil service commissioner appointed or employed under the authority of this section, for incompetency, inefficiency, neglect of duty, or violation of the provisions of this chapter, or of the rules and regulations in force thereunder, or of any of them."

Section 47 of the Optional City Government Law provides as follows: "Subject to the provisions of the civil service law, the council under plans A, B, and C, and the mayor under plans D, E, and F, shall appoint three persons as civil service commissioners to serve for two, four and six years respectively. Each alternate year thereafter there shall be appointed one person

as the successor of the commissioner whose term expires, to serve for six years. Any vacancy shall be filled for the unexpired term in the same manner as an original appointment. Not more than two members of the commission shall be adherents of the same political party, and no member shall hold any other public office to which a salary is attached. A commissioner may be removed during his term of office by the unanimous vote of the council, and upon stating in writing the reasons for removal, and after allowing him opportunity of making an explanation."

It is the contention of the petitioners that the last sentence in section 47 of the Optional City Government Law, pertaining to the Council's power to remove, only has application to a Council which is vested with executive and administrative powers such as a Council operating under Plans A, B or C.

Section 47 starts out by saying: "Subject to the provisions of the civil service law" and therefore subdivision 6 of section 11 of the Civil Service Law should be read in connection with section 47 of the Optional City Government Law. When the two sections are read together it is quite apparent that the council has no jurisdiction of the subject-matter over which they are attempting to act. Under Plans A, B and C the Civil Service Commissioners were to be appointed by the Council but under Plan F they were to be appointed by the Mayor.

The removal of officers appointed for fixed terms can be exercised only by virtue of expressed powers if by an administrative officer or tribunal or judicial court of competent jurisdiction. Where the power of appointment is confirmed in general terms without restriction the power of removal is implied and always exists.

By providing in the first clause of section 47 of the Optional City Government Law that it was "subject to the provisions of the civil service law" subdivision 6 of section 11, of the Civil Service Law must be read in connection with it and therefore the Council of the City of Binghamton had no power or jurisdiction to remove the petitioners and the order asked for was proper under the circumstances.

"A writ of prohibition will not lie in anticipation of the action of the commission if the commission has jurisdiction of the subject-matter and the only question is that of power to grant the particular relief prayed for." (*Matter of Quinby* v. *Public Service Commission,* 223 N. Y. 244, 254.)

In this case the council was without jurisdiction under Plan F to remove the petitioners, that power alone was vested in the Mayor. (*Matter of City of New York* v. *Maltbie,* 248 App.

Div. 36; affd., 274 N. Y. 464; *Matter of Requa* v. *White,* 170 Misc. Rep. 29.)

Section 1296 of the Civil Practice Act provides as follows:

" In a proceeding under this article, the questions involving the merits to be determined upon the hearing are the following only:   *   *   *

"2.   Whether the respondent, if a body or officer exercising judicial or quasi-judicial functions, is proceeding or is about to proceed without or in excess of jurisdiction."

The proposed action by the council on the ordinance proposed was quasi-judicial in character and the council had no such authority or jurisdiction and the order appealed from is reversed and the relief prayed for in the petition of the petitioners-appellants should be granted with fifty dollars costs and disbursements.

BLISS and FOSTER, JJ., concur; HILL, P. J., and HEFFERNAN, J., dissent.

Order reversed and the relief prayed for in the petition of the petitioners-appellants granted with fifty dollars costs and disbursements.

Reference may be had to the opinion for the facts as found by this court.