In the Matter of CITY OF ROCHESTER et al., Petitioners, against PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Supreme Court, Special Term, Albany County, June 12, 1948.

*William H. Emerson* for petitioners.

*Sherman C. Ward* for Public Service Commission of the State of New York, respondent.

*Howard M. Woods* and *Gay M. Brown* for Rochester Transit Corporation, respondent.

MURRAY, J. Petitioners, City of Rochester, the City Manager of Rochester and the Commissioner of Commerce of the City of Rochester, apply for an order determining any or all acts or mandates of the Public Service Commission (hereinafter called commission), approving or authorizing respondent, Rochester Transit Corporation (hereinafter called Transit Cor-

poration) to charge in the city of Rochester the schedule of rates, fares or charges recommended in the opinion of Commissioner Burritt, rendered on January 27, 1948, in Case No. 13280, to be illegal and invalid and also commanding the commission to desist and refrain further hearings in Case No. 13280, relating to rates, fares or charges of the Transit Corporation, its successors and assigns, in the city of Rochester or enforcing or otherwise acting in respect to any fares, rates or charges to be made in said city by the Transit Corporation, its successors and assigns, which are higher than those author-ized by said city in the franchise agreement of February 25, 1890, and to which said city has not otherwise consented and also commanding the Transit Corporation to desist and refrain from charging or otherwise giving effect to the said schedule of rates, fares or charges recommended in the opinion of Commissioner Burritt rendered on January 27, 1948, in Case No. 13280, before the commission and for such other and further relief as to the court may seem just and proper.

The Transit Corporation on or about August 25, 1947, filed with the commission tariffs proposing increased bus fares for Rochester and vicinity. Subsequently by order made on or about September 10, 1947, the commission, on its own motion commenced a proceeding with respect to the tariffs (Case No. 13280) which tariffs were suspended and an investigation and hearings ordered.

When hearing on the rates of fare commenced on September 26, 1947, a motion was made by the City of Rochester for an order of the commission declining to act upon the schedule of fares submitted by the Transit Corporation upon the express ground of its lack of jurisdiction to approve or grant to the Transit Corporation any schedule of fares above either a seven-cent fare with universal free transfers and ten rides for sixty-five cents, or the fare schedule contained in the then existing service-at-cost contract between the City of Rochester and the Transit Corporation. The commission denied the motion. Hearings were held after the termination of which, on or about January 27, 1948, Hon. Maurice C. Burritt, the commissioner presiding, rendered an opinion in said Case No. 13280, wherein he made the following recommendations:

(1) A city weekly pass should be retained with the proposed elimination of the provision for the carrying of two children on Sunday, and the pass priced at $1.20.

(2) A suburban weekly pass should be retained, with proposed elimination of the provision for the carrying of two children on Sunday, and the pass priced at $1.60.

(3) Shoppers' passes be eliminated.

(4) Tokens be retained, and a new token rate of 6/50 cents established.

(5) The above rates be prescribed for a period of six months and the results of the first four months be studied so that modifications in the prescribed rates, if found necessary, may be made at the end of the six months' period.

Commissioner Burritt directed an order to be submitted requiring cancellation of the suspended tariffs and if the Transit Corporation filed new tariffs containing provisions giving effect to the above recommendations, they would be permitted to become effective on five days' notice to the public and the commission, on proper application to the commission. It was also recommended the cash fare rate of ten cents be retained.

The facts are not in dispute. The sole issue to be determined is whether or not the commission has plenary jurisdiction to determine the rates of fare to be charged by the Transit Corporation on its bus lines in Rochester.

The relief sought is in the nature of prohibition under article 78 of the Civil Practice Act. Respondent, Transit Corporation, is a common carrier and is now and has been for several years past operating omnibus lines in the city of Rochester. It is an omnibus corporation (Public Service Law, § 2, subd. 29) and successor to various corporations that have operated public transportation systems in the city of Rochester since the year 1862.

Review and history of the pertinent and relevant facts as to transportation of the public in Rochester by common carrier indicates a franchise was granted in 1862 by the City of Rochester to the Rochester and Brighton Railroad Company (hereinafter called Railroad Company) for the operation of a street railroad by horse cars or steam along public streets in Rochester. In 1890, a franchise agreement was made by and between the Railroad Company and the City of Rochester in and by which the Railroad Company was granted the right to establish and build and operate a street surface overhead single trolley system of electric motive power in streets of Rochester through and upon which the company has constructed and is now maintaining and operating a street surface railroad. The franchise agreement provided after November 1, 1892, the

Railroad Company, its successors and assigns charge no passenger more than five cents for one continuous ride from any point on its road or line or branch operated by it or under its control to any other point thereon, or on any connecting branch thereof within the city of Rochester.

Such agreement is the basis of the claim of petitioners that any rate of fares in excess of five cents even though approved by the commission cannot be charged without consent of the city of Rochester.

The New York State Railways, successor of the Railroad Company, presented to and filed a petition in 1917 with the commission to be permitted to raise the rate of fare from five cents to six cents. Objection by the City of Rochester to the jurisdiction of the commission to entertain and act on the application was sustained by the Court of Appeals. A writ of prohibition was granted against the commission. (*Matter of Quinby* v. *Public Service Comm.*, 223 N. Y. 244.) The Court of Appeals stated the New York State Railways was a street railroad corporation within the meaning of such term as used in the Public Service Commission Law (§ 2, subd. 7).

New York State Railways in 1929, went into receivership, which continued until 1938, when the Transit Corporation was formed as a reorganization of the Rochester Lines of the New York State Railways. Operation of the street surface trolley system continued until 1926 when permission to operate omnibus lines on streets of Rochester was granted by orders of the commission and also upon consent of the City of Rochester. In 1941, transportation of the public by means of street surface trolley cars ceased. There was then complete substitution of motorbus service in place of the outmoded trolley car with the exception of a subway confined to the bed of the old Erie canal owned by the City of Rochester and operated by the Transit Corporation under an operating contract with the city.

Prior to August 28, 1920, New York State Railways, a predecessor of the Rochester Transit Corporation, charged a fare of five cents on its street surface railway lines in Rochester. There was no provision in the rate schedules of that company for a reduced token fare or pass of any description. Pursuant to an order of the Public Service Commission on August 28, 1920, the cash fare was increased to seven cents, with a token rate of four tokens for twenty-six cents (9 P. S. C. R. [2d Dist., N. Y.] 499). At various other times, fares were increased until on January 1, 1929, the cash fare in the city

became ten cents. That cash fare has remained unchanged at ten cents from that time until the present. Throughout this period tokens have been sold in quantities and at prices which have varied from time to time, except for the period from August 10, 1939, to March 15, 1943, when no tokens were sold and the company operated on a straight ten-cent cash fare with a weekly pass.

On January 12, 1935, a weekly pass was introduced in the tariff schedules of the company, priced at $1. This pass entitled the holder to unlimited rides during the week and was transferable. The price of the weekly pass remained at $1 until February 8, 1948, when it was increased to $1.20.

A five-cent fare has not been in effect in Rochester for nearly thirty years. The present cash fare of ten cents for one continuous ride has been continuously in effect since January 1, 1929. No question is raised by petitioners as to the reasonableness of the rate of fare now charged by the Transit Corporation.

The City of Rochester and New York State Railways, predecessor of the Transit Corporation, on July 16, 1920, executed a so-called service-at-cost contract. That contract provided for various rates of fare which could be charged from time to time, depending upon the company's operating expenses and other factors. The service-at-cost contract expired by its terms on July 31, 1930. Prior to that time the United States District Court appointed receivers to operate New York State Railways and on February 24, 1930, the city and the receivers entered into an agreement, purporting to continue the 1920 service-at-cost contract to July 31, 1931. On various dates thereafter the city and the receivers entered into additional agreements which purported to continue the service-at-cost contract. In 1934 the receivers of New York State Railways were replaced by a trustee in reorganization, and in 1938 the Transit Corporation was organized and became the successor to New York State Railways. The trustee in reorganization and the Transit Corporation entered into various agreements with the city, also purporting to extend the service-at-cost contract. The last of such purported extensions was dated December 19, 1942, and ran for a period of five years, expiring on December 31, 1947.

The 1920 service-at-cost contract was submitted to the commission for its approval, pursuant to subdivisions 9, 10 and 11 of section 49 of the Public Service Law, which the commission approved. None of the other agreements by which the parties purported to extend the original service-at-cost contract were

ever submitted to the commission for approval. It has been held the purported extensions of the 1920 service-at-cost contract did not extend the 1920 contract and were without effect because they were not approved by the commission (*Matter of Rochester Tr. Corp.* v. *Public Service Comm.*, 271 App. Div. 406).

In 1945, the Transit Corporation sought a writ of prohibition against the commission and the City of Rochester to restrain the commission from investigating and prescribing rates of fare to be charged by the Transit Corporation for carrying passengers on its omnibus lines in the city of Rochester. The City of Rochester was a party to such proceeding and all the parties to this present proceeding were also parties to the 1945 proceeding. The answer of the commission alleged affirmatively it had jurisdiction under the statutes of the State of New York with respect to the rates of fare charged by the Transit Corporation and that the Transit Corporation was subject to the supervision and jurisdiction of the commission. The contentions of the commission were upheld. The proceeding was dismissed on the merits at Special Term and upon appeal to the Appellate Division, Third Judicial Department, such order of dismissal was affirmed. (*Matter of Rochester Transit Corp.* v. *Public Service Comm.*, 271 App. Div. 406, *supra*, motion for leave to appeal denied 271 App. Div. 944, motion for leave to appeal denied 296 N. Y. 1061.)

The Public Service Commission Law was passed in 1907. It is a constitutional enactment. (*Gubner* v. *McClellen*, 130 App. Div. 716.) The Public Service Commission is the delegate of the Legislature in the regulation of rates. (*Matter of Rochester Tr. Corp.* v. *Public Service Comm.*, 271 App. Div. 406, 410; *Matter of International Ry. Co.* v. *Public Service Comm.*, 226 N. Y. 474.) The Legislature has conferred very broad powers upon the commission as to general jurisdiction over omnibus lines and corporations including jurisdiction over the rates of fare charged by them and otherwise. (Public Service Law, art 3.-A.)

All street surface railway lines in the city of Rochester have disappeared and have been eliminated with the consent of the city. The trolley car is of the past. It has been replaced by the internal gasoline engine. Science and scientific advance have relegated to posterity what was deemed essential one day and outmoded the next. Omnibus and only omnibuses operate today in and upon the public streets, avenues and public places in Rochester. The law is clear that while cities may control

the conditions under which their streets shall be used for bus lines and may make enforcible contracts in their franchise agreements nonetheless the provisions of such contracts must yield, if inconsistent, to the exercise of the power of the State to fix rates of fare. (*People ex rel. City of New York* v. *Nixon*, 229 N. Y. 356.)

Reading and construing the Public Service Law relative to the jurisdiction and power of such commission to regulate the rates of fare or charges for carrying passengers on omnibus lines the Legislature has clearly, definitely and with precision declared:

" Whenever the commission shall be of the opinion, after a hearing had upon its own motion or upon complaint, that the rates, fares or charges demanded, exacted, charged or collected by any omnibus corporation subject to its jurisdiction for the transportation of persons within the state, or that the regulations or practices of such omnibus corporations are unjust, unreasonable, unjustly discriminatory, or unduly preferential, or in any wise in violation of any provision of law over which the commission has supervision, the commission shall determine and prescribe in the manner provided by and subject to the provisions of section sixty-three-b of this chapter, the just and reasonable rates, fares and charges thereafter to be in force for the service to be furnished, and the just and reasonable acts and regulations to be done and observed * * *." (Public Service Law, art. 3-A, § 61, subd. 5.)   And further:

" The jurisdiction of the commission over the matters herein conferred on the commission shall be exclusive."   (Art. 3-A, § 61, subd. 15.)   And still further:

" All charges made or demanded by any such omnibus corporation for the transportation of passengers or for any service rendered or to be rendered in connection therewith, shall be just and reasonable and not more than allowed by law or by order of the commission and made as authorized by this chapter."   (Art. 3-A, § 60-a, subd. 1.)

Such quoted sections of the law are free from ambiguity, the language is mathematically clear beyond controversy and when language so used is capable of but one definite and intelligible construction no discretion is lodged in the court but to give effect to the legislative intent and will as so expressed.   Statutes must be construed to give force to the Legislature's intent which is always paramount.   The fact that the Transit Corporation is incorporated as a street railroad corporation but is in fact

actually operating omnibus lines in Rochester does not exclude it from the provisions of article 3-A of the Public Service Law.

To hold otherwise would be to sanction and emphasize mere form over substance. Fancy over reality. Rational, sensible and practical construction of the law must always be the guide to be preferred over that which is unreasonable or inconsistent.

Municipal corporations are bodies politic and corporate, created by the Legislature as governmental agencies and can only exercise such power as they derive from the source of their creation. The powers which they exercise at all times are subject to legislative control and the Legislature has the power to determine what matters are of general public concern. The rights and franchises of a municipal corporation, being granted for the purpose of government can never become vested rights as against the State that they cannot be taken away, nor does the charter of a municipality constitute a contract in the sense of the constitutional provision which prohibits the obligation of contracts being violated. (*Trustees of Dartmouth College* v. *Woodward,* 4 Wheat. 518; *People* v. *Morris,* 13 Wend. 325.)

" The paramount purpose of the enactment of the Public Service Commissions Law was the protection and enforcement of the rights of the public." (*People ex rel. Delaware & Hudson Co.* v. *Stevens,* 197 N. Y. 1, 9.)

All contracts are made subject to the exercise by government of a sovereign right to legislate for the protection of " the lives, health, morals, comfort and general welfare of the people ". (*Manigault* v. *Springs,* 199 U. S. 473, 480; *Sliosberg* v. *New York Life Ins. Co.,* 244 N. Y. 482, 497.)

Every age and generation has its own economic, social and political and peculiar problems to solve particularly so with reference to vehicular traffic and the perplexities in connection therewith. When the *Quinby* case (223 N. Y. 244, *supra*) was decided, thirty years ago, the surface trolley car was the principal and accepted vehicle for public transportation. It is now a relic of the past. Rapid and marked changes have occurred not only in the manner, way and movement of the public in traveling but in the law with reference thereto as well. The issues presented in the *Quinby* case were and are entirely different from the facts and legal issues in this proceeding. In *Matter of Rochester Tr. Corp.* v. *Public Service Comm.* (271 App. Div. 406, *supra*) the issue was squarely presented and decided that the Public Service Commission has jurisdiction to

fix and adjust the rate of fares on omnibus lines operated by the Transit Corporation in the city of Rochester. The courts in that proceeding refused to prohibit the commission from regulating fares.

Based on legal precedent, the conceded facts and the applicable law and statutes compel determination by this court that the Public Service Commission has plenary jurisdiction in the matter of regulating the rate of fare to be charged by the Transit Corporation in the city of Rochester on omnibus lines operated and conducted by it and accordingly the motion of petitioners must be and hereby is in all respects denied.

Submit order in accordance herewith.