Deyo, J.
The sole issue presented upon this appeal is whether or not the Public Service Commission has jurisdiction to increase the rates of fare charged by the Rochester Transit Corporation on its buses operating in the city of Rochester, above the five-cent maximum clause contained in a franchise granted by the city in 1890.
The facts constituting the historical background of the controversy, which are not in dispute, are set forth in the pleadings, and in the opinion of the court below (192 Misc. 33), and no useful purpose will be served by reiterating them at length. Suffice is it to say that in 1862, a predecessor of this corporation obtained a franchise from the city for the operation of horse cars. In 1890, it was granted permission to establish and operate a trolley system over the same lines by an agreement which contained the maximum five-cent fare clause. In 1917, another predecessor of the corporation applied for an increase in fares, which the courts ultimately determined was beyond the jurisdiction of the commission to grant. (Matter of Quinby v. Public Serv. Comm., 223 N". T. 244.) In 1920, the city and this same *174 predecessor in interest entered into a “ service-at-cost ” contract which was subsequently approved by the commission, and which provided for an increase in fares over the five-cent maximum. This contract was for ten years, and specifically provided that the modification of the five-cent fare clause was for the purposes of that contract, and only for the life thereof. Thereafter, this “ service-at-cost ” contract, with some variations in fares, was extended by supplemental agreements between the city, the corporation and its predecessors in interest, the last period expiring December 31, 1947. The approval of the commission was not obtained to these various extensions. In 1926, a program calling for the substitution of buses for trolleys was inaugurated, which was concluded in 1941, with the consent of the city and the approval of the commission. Ip 1945, the commission, on its own motion, opened hearings relative to the rates of fare. At that time, it was the corporation which attacked the jurisdiction of the commission in a proceeding similar to the one at hand, on the ground that the commission had been ousted of its fare regulatory jurisdiction by the various extensions of the 1920 “ service-at-cost ” contract. However, the court held otherwise. (Matter of Rochester Transit Corp. v. Public Serv. Comm., 271 App. Div. 406, leave to appeal denied, 271 App. Div. 944, 296 N. Y. 1061). In 1947, hearings were reopened and an increase in fares authorized, which resulted in the order from which the instant appeal is taken.
Although the 1945 proceedings involved the same parties and related to the same general question, it can hardly be said to be res judicata of the issue herein raised. True, the purpose of both proceedings was to test the jurisdiction of the commission. In the earlier one, however, no matter what arguments may have been presented in the briefs, the sole issue determined by this court was that there had been no approval by the commission of the extension of the 1920 “ service-at-cost ” agreement, and that in the absence of such approval no valid agreement existed sufficient to oust the commission of its jurisdiction to regulate the fares charged. The disputed jurisdiction of the commission in the instant case is not predicated upon any such extension, since none presently exists, but is based upon the power of the commission to increase fares in abrogation of the maximum fare clause set forth in the 1890 franchise. That issue was neither determined nor even germane to the decision in the earlier proceeding. The substance of the rights established by the first action will not be disturbed nor impaired *175 by the prosecution of the second, and hence, the doctrine of res judicata is not applicable. (Schuylkill Fuel Corp. v. Nieberg Realty Corp., 250 N. Y. 308.)
Turning to the merits of the controversy, it cannot be denied that the police powers of the State are sufficiently broad to permit the regulation of the rates charged by public utilities generally, and by common carriers specifically. The point herein raised is whether the commission may act in derogation of the maximum fare clause contained in the 1890 franchise.
In 1875, the State Constitution was amended to provide that no street railroad should be constructed or operated unless consent was first obtained from the municipality concerned. This provision is now embodied in section 17 of article III of the Constitution. The franchise of 1890 granted that consent to the corporation’s predecessor in interest, a street railway company, conditioned upon the maintenance of a five-cent maximum fare. In Matter of Quinby v. Public Serv. Comm. (223 N. Y. 244, reargument denied 227 N. Y. 601), it was decided, not that the Legislature did not have the power, but that it had not granted authority to the commission to nullify the rate provision contained in the municipality’s consent granted pursuant to the constitutional provision. Subsequently it was held that this doctrine would not apply to fare provisions embodied in franchises granted street railway companies after 1907, the year when the Public Service Commission was created. (People ex rel. Garrison v. Nixon, 229 N. Y. 575.)
The doctrine of the Quinby case (supra) based as it is upon a constitutional provision peculiar to street railways, does not apply to other types of public utility operations. (People ex rel. Village of South Glens Falls v. Public Serv. Comm., 225 N. Y. 216.) Since the Quinby decision the corporation and its predecessors in interest have completely changed their method of operation from street cars to omnibuses. The Public Service Law includes within its definition of an omnibus corporation, any corporation operating any omnibus lines (Public Service Law, § 2, subd. 29) which, in turn, is stated to mean motor vehicles operated for the convenience of the public on fixed schedules and over stated routes carrying passengers for hire. (Public Service Law, § 2, subd. 28.) 'Although the respondent corporation, as a corporate entity, may still be classed as a street railway, it has been operating nothing but omnibuses since 1941 and hence, under the statutes above set forth, is to be treated as an omnibus corporation. The test is the method and scope of operations, not what its charter may say or what *176 its previous corporate history may have been. (Public Serv. Comm. v. Grand Central Cadillac R. Corp., 273 App. Div. 595; Surface Transp. Corp. v. Reservoir Bus Lines, 271 App. Div. 556.) Since respondent is now an omnibus corporation, the Quinby decision has no application and it is subject to the jurisdiction of the Public Service Commission, including its plenary and exclusive regulatory authority over rates of fare. (Public Service Law, § 61, subds. 5, 15.)
Quite apart from the right of the commission to disregard the maximum fare clause because of the change in operations from a street railway to an omnibus line, it would appear that the parties themselves have abrogated and waived this provision. It should be borne in mind that the five-cent fare in Rochester has been inoperative for almost thirty years. It was first abrogated by ordinance in 1920, whereby the city specifically waived the provision and permitted the corporation to apply to the commission for an increase in fares. This increase was granted. True, the ordinance further provided that it might be rescinded at will, but it was not rescinded until long after the commission had acted. By this ordinance the city removed the factor which had blocked the commission’s jurisdiction in the Quinby case. It is extremely doubtful that it retained the power to replace that block, despite any understanding it had with the corporation to the contrary, as embodied in the 1920 “ service-at-cost ” agreement. This agreement was approved by the commission in 1922, thereby fixing the rates for its duration. The contract expired in 1930. It was thereafter extended from time to time until 1947. The commission’s approval of these extensions was never secured. They were, therefore, ineffectual to deprive the commission of its regulatory jurisdiction over the rates of fare. (Matter of Rochester Transit Corp. v. Public Serv. Comm., supra.) Schedules embodying changes in fare were from time to time filed with and approved by the commission. The rates thus fixed, with the exception of the period from 1922 to 1930, were statutory rather than contractual in nature. Being statutory, they were no longer under the control of the parties, but were subject to the exclusive jurisdiction of the commission. A statutory rate once established, even though the authority so to do be subsequently withdrawn, remains the legal rate, and has the effect of abolishing the franchise rate previously in effect. (Matter of United Traction Co. v. Public Serv. Comm., 219 App. Div. 95.)
Since 1907, when the Public Service Commission was created, and particularly since 1931, when article 3-A of the Public Serv *177 ice Law was enacted codifying and clarifying the jurisdiction of the Public Service Commission, the city has entered into numerous contracts modifying, amending and extending previous agreements and franchises, including the 1920 “ service-at-cost ” contract and permitting the substitution of buses for trolley cars. The provisions of these statutes in clear and unmistakable language, grant exclusive regulatory jurisdiction to the commission and must be read into these new contracts. (Matter of Queens-Nassau Transit Lines v. Maltbie, 271 App. Div. 81, 89, affd. 296 N. Y. 893.) It does not profit the city to maintain that these new contracts related back to and preserved the sanctity of the maximum fare provisions of the 1890 franchise. Municipalities may not by their contracts nullify existing statutes. (People ex rel. City of New York v. Nixon, 229 N. Y. 356, 362.)
Finally, it is apparent that during the transitional period from trolleys to buses authority was given by both the city and the commission to at least three separate bus companies to operate on the streets of Rochester. Certainly it cannot be claimed that those corporations could in any way be subject to the maximum fare provisions of a franchise to which they were neither parties nor successors in interest. Their operations must certainly have been under the supervision of the commission from the very outset, and the fact that these companies were subsequently absorbed by the respondent corporation, could not oust the commission of jurisdiction.
The order should be affirmed, with costs.
Foster, P. J., Brewster, Santry and Bergah, JJ., concur.
Order affirmed, with $50 costs. [See post, p. 972.]